**CHARLESTOWN DEMOCRATIC TOWN COMMITTEE, Donna M. Walsh, Individually and as Chairperson of said Committee, Carol Miller, Individually and as Treasurer of said Committee, and James M. Mageau, Individually,**

v.

**Kathleen S. CONNELL, in her capacity as Rhode Island Secretary of State, and the Rhode Island Board of Elections.**

**Rhode Island Democratic State Committee, and Edna O'Neill Mattson, Patrick Keeley, Melvoid Benson, and Lucy Enright, individual intervenors.**

Civ. A. No. 89–0360 P.

United States District Court,
D. Rhode Island.

April 1, 1992.

---

**518**

James J. Mullen, Barrington, R.I., for plaintiff.

Robin E. Feder, Atty. Gen.'s Office, Providence, R.I., for defendants Connell and R.I. State Bd. of Elections.

Anthony J. Bucci, Jr., North Providence, R.I., for defendant R.I. State Bd. of Elections.

Peter J. McGinn, Tillinghast, Collins & Graham, Providence, R.I., for intervenor R.I. Democratic Committee.

Mark S. Mandell, Mandell, Goodman, De-Luca & Schwartz, Providence, R.I., for intervenors Mattson, Keeley, Benson, Enright.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Plaintiffs in this case challenge various sections of Rhode Island election laws as violative of the First Amendment. The challenged sections allow only legislative district committees to file endorsements for candidates to the state legislature with the Board of Canvassers, limit the number of members on legislative district committees, mandate delegate status to certain party officials at state conventions, and specify certain town committee election procedures. As discussed below, plaintiffs do not satisfy essential standing requirements; the Court dismisses the case without prejudice.

### I

The Charlestown Democratic Town Committee is one of thirty-one Democratic town committees in Rhode Island. The three individually-named plaintiffs are members of the Charlestown Democratic Town Committee—two of whom hold offices in that town committee. Plaintiffs brought suit against Kathleen S. Connell, Rhode Island Secretary of State, and the Rhode Island Board of Elections. Two additional groups intervened as defendants—the Rhode Island Democratic State Committee and four individual intervenors who are involved in state Democratic politics.

Plaintiffs sued for declaratory and injunctive relief under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 42 U.S.C. § 1983, and 28 U.S.C. § 2201 seeking to vindicate their asserted First Amendment rights of freedom of speech and association.[1]

Plaintiffs divide their challenge into three basic categories. First, plaintiffs challenge R.I.Gen.Laws §§ 17–12–7 and 17–12–11(b). Section 17–12–7 specifies the number of members any legislative district committee can have.[2] Section 17–12–11(b) mandates that only legislative district committees may officially file candidate endorsements for the state legislature.[3]

---

1. The First Amendment is made applicable to the states through the Fourteenth Amendment. *See Edwards v. South Carolina,* 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963).

2. **R.I.G.L. § 17–12–7: Composition of city and district committees—Appointment.**

   The members of the several ward committees in each city of the same political party shall constitute the city committee of that political party for that city.... For each of the political parties, there shall be a senatorial district committee for each senatorial district to consist of five (5) members where the senatorial district is contained within a single city or town and to consist of seven (7) members where the senatorial district includes all or parts of two (2) or more cities or towns.... There shall be a representative district committee for each representative district to consist of three (3) members, where the representative district is contained within a single city or town, and to consist of five (5) members where the representative district includes all of parts of two (2) or more cities of towns. Representative district committee members shall in the first instance be appointed by the chairman of the state committee of that party.

3. **R.I.G.L. § 17–12–11(b): Endorsement by local committees.**

   Each district committee shall file with the board of canvassers of the city or town of residence of the senatorial or representative candidate endorsed ... the list of candidates in the district which have the endorsement of the committee.

Plaintiffs maintain that these two statutes interfere with their rights to determine for themselves the manner in which they endorse candidates for state elected office.

The second challenge centers on R.I.Gen. Law § 17–12–13; this statute gives automatic delegate status to particular party officials at state conventions.[4] Plaintiffs contend that this selection of automatic delegates to the state convention violates their right to free association.

The third category of plaintiffs' challenge involves R.I.Gen.Laws §§ 17–12–6 and 17–12–9. Section 17–12–6 mandates that town committees be elected biennially;[5] section 17–12–9 compels the town committee to organize in January of odd years.[6] Plaintiffs challenge these sections for interfering with the internal governance of political parties.

## II

Unquestionably, the First Amendment protects the internal workings of political parties. "Our form of government is built on the premise that every citizen shall have the right to engage in political expression and association." *Sweezy v. New Hampshire,* 354 U.S. 234, 250, 77 S.Ct. 1203, 1212, 1 L.Ed.2d 1311 (1957). Because political parties play a crucial role in political expression, political parties and individuals in those parties hold First Amendment rights. *See Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 215–16, 107 S.Ct. 544, 548–49, 93 L.Ed.2d 514 (1986); *Democratic Party of the United States v.*

*Wisconsin ex rel. LaFollette,* 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981). Courts have "placed the internal workings of a political party squarely within the protection of the First Amendment." *Ripon Society, Inc. v. National Republican Party,* 525 F.2d 567, 586 (D.C.Cir.1975), *cert. denied,* 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976).

The state power to regulate the time, place, and manner of elections does not curtail the application of the First Amendment. *Eu v. San Francisco County Democratic Cent. Comm.,* 489 U.S. 214, 222, 109 S.Ct. 1013, 1019, 103 L.Ed.2d 271 (1989) [hereinafter *Eu II* ]; *Tashjian,* 479 U.S. at 217, 107 S.Ct. at 550. "Constitutional challenges to specific provisions of a State's election laws ... cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983); *see also Tashjian,* 479 U.S. at 215, 107 S.Ct. at 548. Any challenge to state election laws requires the Court to examine the particularities of Rhode Island politics and elections.

## III

### A. THE POLITICS OF POLITICAL COMMITTEES

Rhode Island politics revolves around various levels of political party committees. An overview of the political landscape requires a brief explanation of how each type of committee functions.

> The party voters of each political party in each ward of each of the cities of the state shall, biennially, in every even year, at the primary election held to nominate party candidates, elect a ward committee for each ward ... and the party voters of each political party in each of the towns of the state shall biennially at the primary election elect a town committee for the town.

4. **R.I.G.L. § 17–12–13: State conventions.**
There shall be held not later than October 14 of every even year a state convention for each political party. The nominees of a party for senator and for representative in congress, for the five (5) general offices, and for membership in the general assembly shall be delegates to the state convention of that party. In presidential election years, these conventions shall select the party nominees for presidential electors and their names shall be placed on the ballot labels for the forthcoming election. The state convention shall be for the purpose of adopting a platform for its party and for the transaction of such other business as may properly come before the convention.

5. **R.I.G.L. § 17–12–6: Election of town and ward committees.**

6. **R.I.G.L. § 17–12–9: Organization of city, town, and district committees—Officers—Lists of officers and members.**

   (a) All city, town, and district committees shall organize biennially in the month of January in every odd year....

### 1. *State Committees*

In Rhode Island, a state committee heads both political parties.[7] The state committees themselves determine how members are elected or chosen. The Democratic State Committee consists of approximately 200 members, one man and one woman from each of the 100 representative districts in the state. The Democratic Party elects members to the state committee through local primaries. The state committee may endorse candidates for congress, state general offices, and local offices (if local committees fail to endorse a candidate). R.I.Gen.Laws § 17–12–4. The state committee promulgates the internal rules for all other political committees of the party. R.I.Gen.Laws § 17–12–2.

### 2. *City and Town Committees*

Every city and town in Rhode Island has a city or town committee for each of the political parties. City committees are composed of elected ward committees. The size of the ward committees (and therefore the city committees) is set by the city committee itself. The city committee endorses candidates for mayor; the ward committees endorse candidates running for office within each respective ward. R.I.Gen. Laws § 17–12–11.

Towns elect their town committee members; like city committees, town committees set their own size. Town committees endorse candidates for local town office; however, they do not officially endorse candidates for the state legislature—that is left to the respective district committees. Rhode Island has thirty-nine city and town committees for each political party.

### 3. *Representative District Committees*

Rhode Island is divided into 100 representative districts. The state committees of both parties collaborated to create dis-

tricts that satisfy the "one person, one vote" requirements of *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). There are 200 representative district committees in Rhode Island—100 Democratic and 100 Republican. The size of the representative district committee is set by one of the contested statutes in this case. R.I.Gen.Laws § 17–12–7. The representative district committees are authorized, by another statute at issue, to file endorsements for candidates for state representative.

### 4. *Senatorial District Committees*

Rhode Island is divided into fifty senatorial districts. There are 100 senatorial district committees in the state—fifty for each party. The size of these senatorial district committees is set by the same contested statute as the representative district committees. R.I.Gen.Laws § 17–12–7. Like their representative district counterparts, the senatorial districts were created pursuant to *Baker v. Carr* requirements. Most importantly for this case, senatorial district committees are authorized to file endorsements for candidates for state senator.

### B. POLITICAL COMMITTEE ELECTIONS

Primary voters elect party committee members in September of every even year. All candidates, including incumbent political party committee members, must file declarations of candidacy with the local board of canvassers or the Secretary of State. R.I.Gen.Laws § 17–14–1. If more people file declarations of candidacy than the number of slots on that particular committee, all candidate names are placed on the primary ballot. If there is no contest, the names are not listed on the ballot, and the candidates are deemed elected.[8] R.I.Gen.Laws § 17–15–11.

---

7. In Rhode Island, the only political parties organized in this way are Republican and Democrat. Although this action has been brought by a group of Democrats, the sections challenged affect both existing parties and would affect any new party coming to the state.

8. At trial, plaintiff incorrectly asserted that district committees were not elected every two years because there was seldom, if ever, a contest. "Electoral success achieved by default is no less decisive and no less entitled to legal safeguards than victory in the most hotly-contested election." *Fifth Senatorial Dist. Comm. v.*

The committees assume office and organize in January of odd numbered years. Once elected, each committee is free to organize by any method it chooses.

## C. GENERAL STATE ELECTION TIME LINE

During the last consecutive Monday, Tuesday, and Wednesday in June of every even year, candidates for public office file declarations of candidacy with either the local board of canvassers or the Secretary of State. R.I.Gen.Laws § 17–14–1. The appropriate political committee, if it desires, files party endorsements not later than one day after the final day for filing declarations of candidacy. R.I.Gen.Laws §§ 17–14–11 and 17–12–11. If the proper local committee fails to endorse a candidate, the State Committee of the political party has an additional twenty-four hours to file an endorsement in a local race.

Within two business days of the endorsement deadline, candidates obtain their nomination papers. R.I.Gen.Laws § 17–14–4. Candidates must submit these nomination papers with sufficient signatures to the appropriate board within approximately sixty days of the primary. R.I.Gen.Laws §§ 17–14–11 and 17–14–12. Objections to a candidate's eligibility, qualifications, or nomination papers must be submitted around this time as well. R.I.Gen.Laws § 17–14–13.

Once all decisions on objections have been rendered, the Secretary of State prepares ballots for each separate district, ward, and political party primary. The ballots reflect political party endorsements, usually with a star (*) or other small mark. Once all the ballot configurations are calculated, the Secretary of State sends the ballot lists to the printer. The printer prepares drafts for the approval of the Secretary of State. Once approved, the ballots are printed. They are then sent to the Board of Elections for distribution and programming of voting machines.

A citizen must register to vote thirty days before an upcoming primary. R.I.Gen.Laws § 17–1–3. Primaries are

*Quattrocchi,* No. 83–01875, slip op. at 6 n. 5

held on the second Tuesday after the first Monday in September of even years. R.I.Gen.Laws § 17–15–1.

## IV

Although plaintiffs have brought three categories of challenges to the Rhode Island election laws, the major challenge concerns the endorsement process. The State of Rhode Island only accepts endorsements for state legislative candidates from either representative or senatorial district committees. The state prints these accepted endorsements on the primary ballot by placing a star next to the endorsed candidate's name.

Courts must give the First Amendment "its fullest and most urgent application" to speech uttered during elections. *Eu II,* 109 S.Ct. at 1020 (quoting *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971)). With this responsibility in mind, the Court first turns to threshold issue of justiciability.

## A. ACTUAL CASE OR CONTROVERSY

Article III of the Constitution limits the judicial power of the United States to actual cases or controversies. Federal courts have no power unless they "adjudge the legal rights of litigants in actual controversies." *Liverpool, N.Y. & Phila. S.S. Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885).

> The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process. The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts.... As an incident to the elaboration of this bedrock requirement, this Court has always required that a litigant have "standing" to chal-

(D.R.I. April 12, 1983).

lenge the action sought to be adjudicated in the lawsuit.

*Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The primary focus of the standing doctrine is "on the *party* seeking to get his complaint before a federal court." *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968) (emphasis added).

## B. STANDING: INJURY, CAUSATION, REDRESSABILITY

It is a familiar mantra that one must have standing to sue in federal court.[9] Broken into its basic components, standing includes injury, causation, and redressability. A plaintiff in federal court must show that she has suffered an actual or threatened injury. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). "The exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, is therefore restricted to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." *Valley Forge,* 454 U.S. at 474, 102 S.Ct. at 759.

A plaintiff who challenges a statute must show a "realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979). However, one need not violate the statute in order to challenge it. *Id.* (quoting *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974)). This is especially true in a First Amendment case. *San Francisco*

*County Democratic Cent. Comm. v. Eu,* 826 F.2d 814, 821 (9th Cir.1987) [hereinafter *Eu I*].

Once an injury has been shown, the plaintiff must prove that the injury "fairly can be traced to the challenged action." *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Finally, the injury must be capable of redress through a favorable decision. *Simon,* 426 U.S. at 38, 96 S.Ct. at 1925. In the past, courts have considered causation and redressability as one lump requirement.[10] However, the Supreme Court, in *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), separated these two aspects of standing. Even after *Allen,* the separation between these two strands of the standing requirement is far from clear.[11]

### V

## A. HAVE PLAINTIFFS SUFFERED AN ACTUAL INJURY?

Defendants first challenge plaintiffs' assertion of injury. Defendants contend that the endorsement controversy, addressed by plaintiffs' challenge to R.I.Gen.Laws §§ 17–12–7 and 17–12–11(b), does not infringe plaintiffs' freedom of speech.

The principal plaintiffs are the Charlestown Democratic Town Committee and James Mageau, a member of both the Town Committee and the 16th Representative District Committee.[12] The three members of the 16th Representative District Committee from Charlestown are all members of the Charlestown Democratic Town Committee. Plaintiffs claim that the state "interference" in the party—by setting the

---

**9.** As a theoretical matter, it is not clear whether the requirement of standing springs from Article III *ex proprio vigore,* or whether it has been created by the United States Supreme Court itself. *See Flast v. Cohen,* 392 U.S. 83, 97, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968).

**10.** In *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), the Supreme Court stated: "[t]he more difficult step in the standing inquiry is establishing that these injuries fairly can be traced to the challenged action of the defendant,

... or put otherwise that the exercise of the Court's remedial powers would redress the claimed injuries." *Id.* at 74, 98 S.Ct. at 2631.

**11.** "We need not mince words when we say that the concept of 'Art. III standing' has not been defined with complete consistency in all of the various cases decided by this Court...." *Valley Forge,* 454 U.S. at 476, 102 S.Ct. at 760.

**12.** Only Mr. Mageau testified at trial.

number of members on district committees and receiving legislative candidate endorsements only from district committees—burdens their First Amendment rights of free speech and association. Defendants contend that the individual plaintiffs could seek election to representative or senatorial district committees if they wished to participate in this level of the endorsement process. Indeed, in Charlestown, there is significant overlap between the town and representative district committees.

The Court questions the claimed injury to the individual plaintiffs' First Amendment right of free speech and association. The town committee as a whole has perhaps shown an injury in that town committees, under the state statute, cannot officially file endorsements for a candidate for the state legislature. However, the Court need not address the extent of the proffered injuries because it invalidates plaintiffs' standing based on issues of causation and redressability discussed below.

Indeed, the very nature of this case is troubling. One disgruntled town committee, which could not change the internal workings of the Democratic party, brought this suit against the wishes of the rest of the organization. The Supreme Court has questioned the standing of an individual party member or single party committee to maintain this type of action.

> [T]he standing of the committee members to litigate based on injuries to the rights of their respective committees is unsettled. *See Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 543–45, 106 S.Ct. 1326, 1332–33 [89 L.Ed.2d 501] (1986) (school board member, as member of a 'collegial body,' could not take appeal board as a whole declined to take). It may be that rights the committee members can exercise only in conjunction with the other members of the committee must be defended by the committee itself.

*Renne v. Geary,* —— U.S. ——, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991).[13]

It is true that the Charlestown Democratic Town Committee as a whole, as well as the individual members of the committee, brought this action. However, Charlestown Democratic Town Committee has attempted to litigate based on injuries to the rights of the entire Democratic party. The Rhode Island Democratic State Committee, the governing body of the Democratic party, vigorously opposes the present action and has joined as an intervenor defendant. This posture distinguishes the case from *Eu II,* a case relied on by plaintiffs.

Defendants also claim plaintiffs suffer no injury in the second and third categories of statutory challenges. The second category challenge includes only one statutory provision, R.I.Gen.Law § 17–12–13, which grants automatic state convention delegate status to party nominees. Again, the injury to these particular plaintiffs seems strained. Plaintiffs claim their right of association is violated because they are forced by statute to associate with the candidates from their own party. No evidence was presented at trial that the plaintiffs ever attended a state political convention. The Court doubts any claim of injury can be maintained; however, due to plaintiffs' lack of standing under causation and redressability, the Court need not address the extent of the claimed injury.

The last category of statutory challenge includes the two sections, R.I.Gen.Laws §§ 17–12–6 and 17–12–9, that set out certain procedures for the election and organization of town committees. First, plaintiffs complain that the state statute requires an election for town committee every two years. Plaintiffs allege this requirement violates their First Amendment rights. While here these particular plaintiffs have alleged an injury specifically addressed to themselves as a town committee, the Court finds the injury *de minimis.* The state has a legitimate function in setting the time, place, and manner of elections. Almost all state legislative offices are elected every two years; the election of town committees every two years fits in with this election scheme. This biennial

---

**13.** In *Renne,* the Supreme Court dismissed the case for lack of standing.

election requirement cannot really be seen as a burden to constitutional rights.

Additionally, plaintiffs contend that town committees should be able to organize anytime after September elections. Plaintiffs obviously misinterpret the state law in this area. The newly elected town committees, while elected in September, do not take office until January. The old, "lame-duck," town committee holds office until the end of the year. The challenged statute, which mandates organization in January after an election, does not burden plaintiffs in an actionable manner.

Although the injury to plaintiffs seems strained, even nonexistent, the Court does not linger on this standing requirement. Plaintiffs' standing fails on the elements of causation and redressability as discussed in the next section.

## B. ARE THE ALLEGED INJURIES CAUSED BY THE STATE STATUTE?

Second, defendants claim that plaintiffs' injuries, if in fact they exist, are not caused by the statute. The Democratic State Committee has in its by-laws chosen the identical methods as set forth in the challenged statutes. If the challenged statutes were struck down by this Court, the rules of the Democratic party would still mandate the same procedures.

Plaintiffs contend that if the Court struck down the statutes, the Democratic party by-laws would be struck down as well. In the alternative, plaintiff claims that even if the Democratic by-laws remained in place, they could be changed at any later time without running afoul of the statutes. The latter argument is clearly not ripe for decision before this Court. The Court will not engage in a game of "what-ifs;" to do so would contradict the mandate of the Constitution to decide only actual cases and controversies.

The former argument deserves more attention. Plaintiffs highlight certain language in *Eu I* that states "that conformity with obligations imposed by law [does not prove] that those laws do not restrict constitutional freedoms ..." *Eu I*, 826 F.2d at 823. In *Eu I*, the Democratic party had adopted by-laws which mimicked the California statute in question. However, the Democratic party then sued the state to have the statutes struck down. The State of California argued that the Democratic party could not challenge the statute because their by-laws were the same; the Court found this argument erroneous.

Although the cases look similar at first glance, our case is in fact very different. Here, the governing body of the Democratic party itself wants the statute to remain in place. If the Court were to strike down the statute, the Democratic State Committee has averred that it would not change the bylaws of the party. The plaintiffs, as they must act in concert with the rest of the party, will not get the results they desire regardless of the actions of this Court. In *Eu I*, once the California statute was stricken, the Democratic party changed its own rule.

If a political party has chosen an endorsement method which happens to agree with state law, the state law cannot truly be said to create a burden. In *Marchioro v. Chaney*, 442 U.S. 191, 99 S.Ct. 2243, 60 L.Ed.2d 816 (1979), the Supreme Court upheld a Washington statute requiring that each major political party have a state committee consisting of two persons from each of the thirty-nine counties in the state. The Washington Democratic State Committee added additional members, and a motion to seat these additional members was ruled out of order because of the state statute. Members and officers of the state committee, including four of the additional individuals, brought suit to have the Washington statute declared unconstitutional under the First Amendment. The Washington Supreme Court upheld the statute.

On appeal, the United States Supreme Court affirmed the decision, holding that the party itself, not the state, imposed the burdens claimed.

There can be no complaint that the party's right to govern itself has been substantially burdened by statute when the source of the complaint is the party's own decision to confer critical authority on the State Committee. The elected

legislative representatives who claim that they have been unable to participate in the internal policymaking of the Committee should address their complaint to the party.

*Marchioro,* 442 U.S. at 200, 99 S.Ct. at 2248.

In *Eu II,* the Supreme Court wrote "[t]hat the bylaws of some parties prohibit party primary endorsements also does not prove consent." *Eu II,* 489 U.S. at 225 n. 15, 109 S.Ct. at 1021 n. 15. Again, our case is different. The governing body of the Democratic party joined this case as a *defendant,* and has made clear to the Court that the rules were enacted by choice, not because the statutes mandated them.

If the Court were to strike down these statutes, the provisions would still remain in place under the Democratic party bylaws. Federal courts should not engage in this sort of pointless activity. In *Renne v. Geary,* —— U.S. ——, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991), the Supreme Court dismissed a California election statute challenge on justiciability grounds. Concerned with ripeness and redressability, the Court reasoned: "[r]ules of justiciability serve to make the judicial process a principled one. Were we to depart from those rules, our disposition of the case would lack the clarity and force which ought to inform the exercise of judicial authority." *Id.* 111 S.Ct. at 2340. Although the Court maintains strong reservations about the extent of plaintiffs' injuries, plaintiffs' standing ultimately fails because of lack of causation and redressability.

## VI

Although the Court dismisses the action for lack of standing, a brief glance at the merits is not pointless. In fact, it seems necessary to point out what this case is not. This case is not *Eu I* or *Eu II.* In those cases, the State of California prevented any and all endorsement of candidates by political parties. This prohibition did not extend merely to ballot endorsements, but endorsements of any kind, official or unofficial. Justice Marshall's powerful language about the importance of free speech

in the election process speaks eloquently against this type of state interference. The Rhode Island statute under attack does not engender anywhere near the type of interference found in the California statute. The Rhode Island statute merely prescribes from whom it will receive official endorsements. In fact, nothing prevents the Democratic party from implementing a completely different manner of endorsement and simply submitting the endorsement through the district committees.

Similarly, this case is not *Tashjian.* That case centered on Connecticut's closed primary statute, and the paramount importance a political party has in defining its associational boundaries. In 1976, a three-judge district court upheld the Connecticut statute's constitutionality in *Nader v. Schaffer,* 417 F.Supp. 837 (D.Conn.), *aff'd,* 429 U.S. 989, 97 S.Ct. 516, 50 L.Ed.2d 602 (1976) when it was challenged by an independent voter. In that action, the Republican Party opposed the plaintiffs' lawsuit. After the *Nader* decision, the Republican Party changed its views with respect to participation by independent voters in primaries. The Party itself then challenged the constitutionality of the statute in *Tashjian.* In part because of the change in plaintiffs, the Supreme Court held the Connecticut statute invalid. Our present case would look very different if the Democratic State Committee, the governing body of the political party, had not joined in opposition to this lawsuit.

It must also be remembered that there must be more than a minimal infringement on First Amendment rights before the state must provide a "compelling interest" to justify a statute. The Court does not reach the merits today. However, the burden claimed by plaintiffs under several of the statutes might be described as *de minimis* at best. This controversy simply does not raise the same fundamental burdens as the cases relied upon by plaintiffs. The Court believes that "no substantial hardship would accrue from a dismissal of respondents' action without prejudice...." *Renne v. Geary,* 111 S.Ct. at 2342 (Stevens, J., concurring).

## VII

The First Amendment embodies the most noble aspirations of the Constitution, and claims of First Amendment violations are never taken lightly by this Court. Federal courts should always be vigilant and sensitive to violations of our rights of freedom of expression and association. However, part of that vigilance must include screening out cases which, under the guise of the First Amendment, do not actually present justiciable claims. Those claims a court cannot and should not entertain.

The invocation of the First Amendment does not automatically give constitutional dimensions to a conflict or standing to a plaintiff. The standing doctrine is not merely an escape hatch for courts who seek to avoid the merits of a case. Proper standing ensures that federal courts focus only on actual controversies that can be resolved. Without adhering to standing requirements, federal courts would trample on the separation of powers, waste judicial resources, and render purely advisory opinions. The Charlestown Democratic Town Committee and Mr. Mageau feel strongly about the organization of the Rhode Island Democratic Party; the Court does not doubt their sincerity or conviction. Be that as it may, federal courts need to redress violations of basic human rights and freedoms, not police the internal squabbling of political groups. The state statutes at issue have simply not caused plaintiffs' alleged injuries.

Due to plaintiffs' lack of standing, the case is dismissed.

SO ORDERED.