Robert G. MARSHALL and Patrick
M. McSweeney, Plaintiffs,

v.

M. Bruce MEADOWS, Pamela L. Clark
and George M. Hampton,
Defendants.

Civil Action No. 3:96CV208.

United States District Court,
E.D. Virginia,
Richmond Division.

April 17, 1996.

Daniel Allen Carrell, Robert Christopher Rice, Carrell & Rice, Richmond, VA, for Plaintiffs.

Alice Ann Berkebile, Office of the Attorney General, Richmond, VA, for Defendants M. Bruce Meadows, Pamela L. Clark and George M. Hampton, Sr.

Lewis Franklin Powell, III, Robert Hewitt Pate, III, Sarah C. Johnson, Hunton & Williams, Richmond, VA, for Defendant John Warner, Senator.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on various motions, chiefly the defendants' motion to dismiss. United States Senator John War-

ner has moved to intervene as a defendant and has tendered a proposed answer, motion for judgement on the pleadings and motion to dismiss. In addition, plaintiffs have moved to strike various exhibits of defendants and Warner. The case presents the question of whether two members of a political party have standing to file suit ninety days before a primary to be conducted under Virginia's open primary law, Va.Code Ann. § 24.2–530, when the political party itself has adopted an open primary and refuses to join the suit. The Court finds that the plaintiffs lack standing, have failed to show a redressable injury and are in laches, and therefore the case will be dismissed.

As a preliminary matter, Senator Warner and the defendants do not oppose the plaintiffs' motions to strike. Those motions will be granted and the Court will not rely on the exhibits. The Court instead relies on the remaining exhibits, to which plaintiffs have conceded admissibility, and on the agreed statements of fact in the parties' written and oral arguments before the Court.

### Facts and procedural history.

The plaintiffs are Delegate Robert Marshall, a Republican representing Virginia's 13th House of Delegates District, and Patrick McSweeney, Chairman of the Republican Party of Virginia ("the Party"). The defendants, sued in both their personal and official capacities, are members of Virginia's board of elections, with Bruce Meadows the Secretary of the board. Senator Warner is a current United States Senator who seeks renomination and reelection in the 1996 Virginia senate race. The Republican Party of Virginia is not a litigant—plaintiff or defendant—in this suit.

Plaintiffs have known for approximately one year that Senator Warner intended to seek renomination by primary. Pursuant to Va.Code Ann. § 24.2–509(B), colloquially known as the incumbent protection act, Senator Warner's incumbency entitles him to a primary unless he consents to a different procedure. Warner chose a primary and the Party Central Committee adopted one by resolution on December 9, 1995: "The Republican Party of Virginia State Central Committee does hereby select a primary to

select the nominee for a United States [Senate] candidate for the 1996 election to be held November 5, 1996."

The Committee rejected an amendment that would have expressed a preference for a convention had Virginia law not provided for a primary through the incumbent protection act. However, in December 1995 the Party's State Central Committee, its principal committee, unanimously adopted a resolution requesting that the General Assembly require voter registration by political affiliation—the inference is that such a law would lead eventually to a closed primary. Delegate Marshall introduced such a bill in the 1996 session. The bill was tabled, effectively killing it. Finally, at some or various points over the above time span, plaintiffs sought to have the Party itself endorse a lawsuit similar to this one. They failed.

Under Va.Code Ann. § 24.2–515, the Republican primary is to take place on June 11, 1996; this suit was filed and served on the defendants on March 8. In other words, this suit was filed only 95 days before the primary is to be held.

The plaintiffs emphasize that they are not asking for the creation of a caucus and convention scheme, or the invalidation of this June's primary; rather, they merely ask that the open primary law be declared unconstitutional. The purported significance of such declaration is that the Party might then, if Virginia passed appropriate new legislation, hold a closed primary. The plaintiffs claim a real controversy exists because they claim that a closed primary is the true preference of the Party. As proof they rest on an allegedly clear conflict between Virginia's political primary laws, Va.Code Ann. §§ 24.2–509, –516, –517 & –530, and Article I, § A(1) of the Party Plan. That section of the plan provides:

> All legal and qualified voters under the laws of the Commonwealth of Virginia, regardless of race, religion, national origin or sex, who are in accord with the principles of the Republican Party, and who, if requested, express in open meeting either orally or in writing as may be required their intent to support all of its nominees

for public office in the ensuing election may participate as members of the Republican Party of Virginia in its mass meetings, party canvasses, conventions, or primaries encompassing their respective election districts.

### Analysis.

**1. Senator Warner's motion to intervene.**

Fed.R.Civ.P. 24(a) provides for intervention as of right where the intervenor "is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect [his] interest." Intervention is also appropriate permissively under Rule 24(b), which only requires a "question of fact or law in common" and a discretionary finding that intervention will not prejudice the original parties.

■ Plaintiffs' lead argument against intervention is that Rule 24(c), governing the procedure for intervention, requires that the motion to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Plaintiffs assert that because until recently Warner had submitted only a motion to dismiss, he had made no "pleading" and therefore violated Rule 24(c). The Court need not involve itself in this preliminary squabble. The Fourth Circuit rejects strict application of Rule 24(c), holding that "the proper approach is to disregard non-prejudicial technical defects." *Spring Construction Co., Inc. v. Harris,* 614 F.2d 374, 377 (1980). Senator Warner has served all parties with each of his filed and proposed motions and has now even tendered a proposed answer to meet the technical requirements of Rule 24(c). At this early stage of the case, where even the named defendants are not yet required to answer, no prejudice to plaintiffs can be shown. Defendants do not oppose Warner's motion.

Senator Warner's intervention serves a valid purpose in this case. He has more than merely identical interests and arguments to the named defendants, as plaintiffs asserts. In the words of the Rule and the Fourth Circuit, Warner has "as a practical matter" a vital interest in a procedure through which he is currently seeking election and toward which he has expended considerable money and time. Through those efforts Warner raises the issue of prejudicial reliance and thus the defense of laches, whereas the Commonwealth has not raised laches and may not be in a position to argue it forcefully. Warner's motion is appropriate under both Rule 24(a) and (b); therefore, his motion will be granted and his proposed motions and pleadings will be filed in due course.

**2. The defendants' and Senator Warner's motion to dismiss.**

The defendants and the Senator argue that the plaintiffs lack standing. Warner further argues that the plaintiffs are in laches and must be dismissed. The Court examines the issues separately.

■ The Court first turns to the issue of standing. As the Court has noted, federal courts refuse to adjudicate abstract questions of wide public significance that amount to generalized grievances shared by many. *See Froelich v. Federal Election Commission,* 855 F.Supp. 868, 870 (E.D.Va.1994), *aff'd,* 57 F.3d 1066 (4th Cir.1995) (private plaintiffs challenging interstate campaign contributions had no standing to sue), *quoting Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Renne v. Geary,* 501 U.S. 312, 316, 111 S.Ct. 2331, 2336, 115 L.Ed.2d 288 (1991). An injury to the specific plaintiff must be "distinct and palpable" and cannot be "inferred argumentatively" from the pleadings. *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990); *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990). Although the Court has reviewed the wide body of Supreme Court and other standing precedent submitted by the parties, two cases are most instructive: *Bender v. Williamsport Area School District* and *Charlestown Democratic Town Committee v. Connell.* 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); 789 F.Supp. 517 (D.R.I.1992).

In *Bender,* one member of a school board attempted to appeal a judgment against the board where the board itself refused to appeal. 475 U.S. at 543–44, 106 S.Ct. at 1332. The Supreme Court found that even his status as a board member did not permit the plaintiff to "step into the shoes of the Board and invoke its right to appeal." *Id.* at 544, 106 S.Ct. at 1332 (quotation omitted). *Connell* then applied *Bender* to facts closely analogous to the present case: in *Connell,* a Democratic Party subcommittee and private plaintiffs challenged various state laws, among them one which specified the number of members certain party committees could have and one which made certain party officials automatic delegates to state conventions. 789 F.Supp. 517 (D.R.I.1992). They sued, like the present case's plaintiffs, on First Amendment freedom of association. The court noted that:

> the very nature of this case is troubling. One disgruntled town committee, which could not change the internal workings of the Democratic party, brought this suit against the wishes of the rest of the organization.

*Id.* at 523. The court cited *Bender* and found no standing. The court hinted that the injury, if any existed, was to the party and that entity alone could bring the suit. *See id.* at 524. But the court finally found no standing based on lack of causation and redressability: since the Democratic Party had embraced the rules created by the statute, and unquestionably had the right as a private party to do so, a change in the law would mean nothing. *See id.* Since the plaintiffs had not shown that a declaration of unconstitutionality would bring them any relief, there was no controversy and no jurisdiction and the case was dismissed.

Although in contrast to this case the political party in *Connell* actively opposed the plaintiffs' suit, and even joined the action as an intervenor defendant, the reasoning of *Connell* and *Bender* controls. Plaintiffs' standing arguments fail both on the issue of causation and redressability and on the issue of capacity to sue.

■ Plaintiffs cannot clearly establish a distinct and palpable injury in fact. The Party Plan does not clearly or even reasonably demonstrate that the Party itself opposes the open primary law. Quite the contrary—the plan embraces "the laws of the Commonwealth of Virginia," of which the challenged statute is one. Plaintiffs concede that the Party itself chose the primary and also chose not to protest or legally challenge the law—this despite the fact that Virginia's Attorney General, at the request of plaintiff McSweeney, examined the law's constitutionality. Plaintiffs also concede that the Party has the right to set its own procedures and have not demonstrated that were the Court to strike the statute at this late date, the Party would then change its rules. As such plaintiffs have not shown an actual controversy. The Court does not adjudicate hypothetical questions and thus lacks jurisdiction to hear this one.

■ On the separate question of capacity to sue as a representative of the Party, as in *Connell* plaintiffs have raised a separate and more troubling issue. The plaintiffs have not clearly demonstrated that they are the proper party to invoke judicial review. The Party itself has not joined this suit and in fact refused to initiate it. The proffered reasons for this refusal—cost, shortness of time, political appearances or support for the statute—are ultimately irrelevant. The Party's actions must speak louder than the conflicting motivations attributed to it by opposing litigants, and those actions are clear: the Party chose an open primary and chose not to challenge the primary law or even add protesting language to its Party Plan. That two of the most prominent members of the Party, a United States Senator and its Chairman, disagree in this litigation is the final proof that plaintiffs cannot demonstrate a proper representative capacity. Plaintiffs have demonstrated no standing as a proper party and therefore no jurisdiction exists.

■ The Court turns finally to the issue of laches. Laches requires the proof of two elements: (i) lack of diligence by the party against whom the defense is asserted, meaning an inexcusable or unreasonable delay, and (ii) prejudice to the party asserting the defense. *White v. Daniel,* 909 F.2d 99, 102

(4th Cir.1990), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991), *citing Costello v. U.S.*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). Delay and prejudice are a complimentary ratio: the more delay demonstrated, the less prejudice need be shown. *Id.* at 103. The defendant is ultimately required to prove laches as an affirmative defense pursuant to Fed.R.Civ.P. 8(c), but as explained above, the Fourth Circuit disdains a hypertechnical reading of the rules; laches is an appropriate issue for a motion to dismiss in this case.

■ Plaintiffs base their opposition to laches on slight prejudice to the intervenor. They assert that a closed primary would not be materially different from an open primary, and they further emphasize that they have opposed the open primary since 1995. Plaintiffs further claim that Warner has seen this suit coming for months, perhaps since the Attorney General's review of the statute in fall of 1995.

Plaintiffs' argument, however, would permit them to use their own strategic delay to avoid laches. "Strategic" is not used here in the pejorative sense; rather, the plaintiffs concede that their strategy was to avoid the costs and political consequences of litigation by attacking the open primary law outside the courts. In one sense this action is laudable given the crowded dockets of the Eastern District—plaintiffs filed suit only after having lost before the Attorney General, the Party and the General Assembly. However, plaintiffs have chosen the non-litigation path and must live with the consequences. Those consequences are first, that Warner has planned and organized a primary campaign at least since December, and second, that the time is now very short for this Court to fashion complete relief.

The time element is most important. Were this Court to strike the statute, permit the state legislature to rework it, and have the Justice Department review it per the Voting Rights Act, various parties including Warner and his supporters would be forced into a frenzy of activity. That frenzy would have been avoided had plaintiffs filed suit when they first considered it in 1995. While the Court agrees that the prejudice to War-

ner need not be fatal to his nomination bid, the demands of a new style of primary would be substantial in terms of cost and staff time. Under the delay/prejudice ratio, prejudice need not be so severe where, as here, delay is conscious and substantial. The Fourth Circuit is especially mindful of laches in the context of an impending vote. *See Simkins v. Gressette*, 631 F.2d 287, 296 (1980); *Maryland Citizens for a Representative General Assembly v. Governor of Maryland*, 429 F.2d 606, 609–10 (1970).

The Court finds that the plaintiffs have slept on their rights to the detriment of the intervenor, and that in consideration of the entire circumstances of the case, the plaintiffs are in laches. Therefore even were the plaintiffs to demonstrate standing, the case would be dismissed.

### Conclusion.

As a preliminary matter, the Court finds no opposition to plaintiffs' motions to strike and those motions are granted. The Court disregards the non-prejudicial technical defects of Senator Warner's motion to intervene of right as a party defendant and grants the motion pursuant to Rule 24(a), though the Court also holds that Warner's motion is appropriate under Rule 24(b). As to the motions to dismiss, the Court holds that the plaintiffs lack standing, having failed to demonstrate an actual controversy both by failing to show causation and redressability and by failing to prove their status as proper parties to bring this suit. The Court also finds that the plaintiffs are in laches, having slept on their rights to the prejudice of the intervenor. The defendants' and intervenor's motions are granted and the case is dismissed.

Let the Clerk send a copy of this Memorandum Opinion and accompanying Final Order to all counsel of record.