**Sonia J. DOUTY, Plaintiff,**

**v.**

**IRWIN MORTGAGE CORPORATION, Inland Mortgage Corporation Larry Vida; Scott Barr; and Rick Martin Defendants.**

No. CIV.A.99–1243–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 13, 1999.

---

Bernard J. DiMuro, DiMuro, Ginsberg & Lieberman, Alexandria, VA, for Plaintiff.

Jennifer J. Dacey, Hazel & Thomas PC, Falls Church, VA, Michelle L. Bodley, Ray & Isler PC, Vienna, VA, for Defendants.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is a Motion to Dismiss on Behalf of Defendants Larry Vida, Scott Barr and Rick Martin and Defendant Irwin Mortgage Corporation's separate Motion to Dismiss. For the reasons stated below, the motions will be GRANTED in part and DENIED in part.

### I. Procedural Background

The plaintiff, Sonia J. Douty, has alleged three causes of action against defendants Irwin Mortgage Corporation ("Irwin"),[1] Larry Vida, Scott Barr, and Rick Martin: sex based discrimination in violation of Title VII (Count I), conspiracy to interfere with contractual relations (Count II) and tortious interference with prospective business (Count III).

Plaintiff alleges in her Motion for Judgment filed in the Circuit Court for Prince William County on May 21, 1999, and sub-

sequently removed to this court, that she was employed by Irwin as a loan officer from January 1986 until her termination on May 10, 1996. (Mot. for J. at ¶ 6.) At the time of her termination, plaintiff was working out of Irwin's Woodbridge office. Also employed at that office were the three individual defendants: Larry Vida and Scott Barr as branch managers, and defendant Rick Martin as a loan officer. (*Id.* at ¶¶ 3, 4, 5.) Plaintiff's causes of action relate to her termination from Irwin and defendants' activities immediately following her termination.

Plaintiff alleges that Vida advised her on May 3, 1996, that Irwin would be closing the Woodbridge office, and that loan officers working out of that office would be terminated on May 10, 1996. (*Id.* at ¶ 11.) On May 10, 1996, plaintiff, who was the only female loan officer in the Woodbridge office, was discharged, although Irwin, acting through defendants Vida and Barr, offered all male loan officers from the Woodbridge office positions at other Irwin offices. (*Id.* at ¶ 13)

According to plaintiff, she was a top producer for Irwin. (*Id.* at ¶ 8.) During her tenure, she cultivated valuable contacts in the construction industry, giving rise to a substantial construction loan business for the company. (*Id.* at ¶ 7.) Barr and Martin did not have the same success with the construction industry. (*Id.* at ¶ 10.) Plaintiff contends that the loans she had acquired but had not yet closed before she was terminated were distributed to other loan officers, including Barr and Martin. (*Id.* at ¶ 15.) Plaintiff also alleges that, after she left Irwin, the individual defendants, acting on behalf of Irwin, interfered with her prospective business contracts in the construction industry by providing false and misleading information regarding her employment and termination at Irwin. (*Id.* at ¶ 35.)

---

**1.** In early 1988, Inland Mortgage Corporation changed its name to Irwin Mortgage Corpora- tion.

Plaintiff first filed her claims on May 1, 1998, in the Circuit Court for Prince William County. However, she never served her Motion for Judgment on the defendants. Nearly a year later, on April 30, 1999, the court granted plaintiff's request for a nonsuit. On May 21, 1999, plaintiff refiled the same claims in the Circuit Court for Prince William County and had the new Motion for Judgment served on defendants who removed it to this court on August 19, 1999.

## II. Discussion

Defendants Scott Barr and Larry Vida move to dismiss Count I arguing that there is no individual liability for supervisors under Title VII.[2] All defendants move to dismiss Counts II and III as time barred under the statute of limitations, or, in the alternative, barred by the doctrine of laches. In addition, all defendants argue that Count II should be dismissed for failure to state a claim and Irwin argues that Count III should be dismissed as to it for failure to state a claim.

### A) Individual Liability under Title VII

■ Barr and Vida move to dismiss Count I on the ground that supervisors are not liable in their individual capacities for Title VII violations, under *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir.1998). Plaintiff concedes that defendants are correct. We agree, and therefore, Count I will be dismissed as to the individual defendants Barr and Vida.

**2.** Plaintiff properly exhausted her administrative remedies by filing her sex discrimination claim on October 8, 1996, with the Prince William County Human Rights Commission (PWCHRC). The PWCHRC found probable cause on April 8, 1998, and the EEOC issued a Notice of Right to Sue on February 23, 1999.

**3.** Virginia Code provides:
If plaintiff suffers a voluntary nonsuit prescribed in § 8.01–380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and *the plaintiff may recommence*

### B) Statute of Limitations

■ All defendants move to dismiss Counts II and III on the grounds that they are time barred by the statute of limitations. Although plaintiff filed the current action after the statute of limitations expired, the Court finds that Counts II and III are not time barred because statutory tolling provisions extended the statute of limitations as to both counts.

The parties agree that, under Virginia law, the statute of limitations governing conspiracy to interfere with a contractual relationship, and tortious interference with prospective business, that is, Counts II and III, is two years. Plaintiff filed her first Motion for Judgment on May 1, 1998, which was just within the two year limit. One year later, she nonsuited the case. Under Virginia law, when a plaintiff suffers a voluntary nonsuit, she has the longer of six months or the original period of limitation in which to refile the action.[3] According to plaintiff, she was well within this six-month period when she filed her second Motion for Judgment on May 21, 1999——less than one month after the court entered an order for the voluntary nonsuit. The causes of action in both motions for judgment are identical.

Without citing any case law, defendants contend that plaintiff's failure to serve them with the first Motion for Judgment precludes the application of the tolling provision. According to defendants, allowing plaintiff to benefit from the tolling provision under these circumstances would be

*his action within six months from the date of the order entered by the court, or within the original period of limitation, or within the limitation period as provided by subdivision B 1* [tolling statute due to death of a party], *whichever period is longer.* This tolling provision shall apply irrespective of whether the action is originally filed in a federal or a state court and recommenced in any other court, and shall apply to all actions irrespective of whether they arise under common law or statute.
Va.Code § 8.01–229(E)(3) (emphasis added).

inconsistent with other provisions in the Virginia Code. These provisions purport to protéct defendants by limiting the circumstances under which a plaintiff may "suffer" a voluntary nonsuit.[4] Defendants argue that they could not afford themselves of these statutory protections if they had no notice of a lawsuit pending against them, nor plaintiff's petition for nonsuit.[5] Although defendants' statutory interpretation makes sense,[6] their conclusion conflicts with rulings of the Virginia Supreme Court which we must follow in this diversity action. In *McManama v. Plunk*, 250 Va. 27, 458 S.E.2d 759 (1995), plaintiff filed a motion for judgment a few days before the expiration of the statute of limitations, instructing the clerk not to serve process on defendant, who was never served. One year and two days after filing the motion for judgment, plaintiff obtained an *ex parte* order for a voluntary nonsuit. Over four months later, plaintiff filed a second motion for judgment, realleging the same cause of action against the same defendant. The Virginia Supreme Court decisively rejected the defendant's argument that such conduct should foreclose the plaintiff from invoking the tolling provision.

> [T]he trial court erroneously placed limitations on the plaintiff's right to voluntary nonsuit when it ruled that defendant 'must first had to have been served with process, must have been before a court with jurisdiction over the defendant's person, and the defendant must have been given notice of hearing and an opportunity to be heard.' None of these requirements is found in the applicable statutes, and the court should not add them by judicial fiat.... Therefore, the plaintiff's nonsuit of her first action was valid, the two-year statute of limitations was tolled, and the plaintiff properly recommenced her action within six months from the date of the nonsuit order as authorized by Code § 8.01–229(E)(3).

250 Va. 27, 32, 458 S.E.2d 759 (1995).

In light of *McManama*, we conclude that plaintiff effectively tolled the two-year statute of limitations when she filed the first action, and preserved her claims for an additional six months by nonsuiting that action, even though she never served defendants with either the first Motion for Judgment or her nonsuit papers. Therefore, under the applicable statute of limitations, Counts II and III are not time barred.

*C) Doctrine of Laches*

■ Alternatively, defendants argue that Counts II and III should be dismissed under the doctrine of laches. To establish a time bar under laches a defendant must establish: "(1) lack of diligence by the

---

**4.** In Virginia, a defendant has the following rights with respect to nonsuits by plaintiffs: plaintiffs may not suffer a nonsuit after a motion to strike the evidence has been sustained, the jury has retired from the bar, or the action has been submitted to the court for decision. Va.Code § 8.01–380(A). After a nonsuit is taken, plaintiff may recommence the action only by filing in the same court as she filed the original action. *Id.* Plaintiffs are entitled to only one nonsuit by right. Va. Code § 8.01–380(B). Plaintiffs may not nonsuit a cause of action where a cross claim, counterclaim, or third-party claim is pending, unless the latter claims may be independently adjudicated. Va.Code § 8.01–380(C).

**5.** Apparently, a defendant who does receive service of process becomes entitled to notice of plaintiff's petition for nonsuit. *See Iliff v.*

*Richards*, 221 Va. 644, 649, 272 S.E.2d 645 (1980) (finding that defendant with a pending cross claim against his co-defendant should have received notice of plaintiff's motion for voluntary nonsuit before the trial judge granted it).

**6.** In addition to statutory interpretation, defendants draw on Justice Whiting's dissent in *McManama v. Plunk*, 250 Va. 27, 458 S.E.2d 759 (1995), to support their position. In his dissent, Whiting cited Blackstone's account of nonsuits at common-law, as well as contemporaneous legal commentary on earlier Virginia statutes permitting nonsuits, to demonstrate that the 1977 General Assembly enactment of the tolling statute implicitly assumed that defendants were served with process at the time of nonsuit. *Id.* at 36–40, 458 S.E.2d 759.

party against whom the defense is asserted, meaning an inexcusable or unreasonable delay, and (ii) prejudice to the party asserting the defense." *Marshall v. Meadows,* 921 F.Supp. 1490, 1493–94 (E.D.Va.1996) (quoting *White v. Daniel,* 909 F.2d 99, 102 (4th Cir.1990)). However, as plaintiff argues, defendants fail to address why the doctrine of laches would apply to the instant action, in which legal, not equitable, claims are raised.

■ In *White v. Daniel,* 909 F.2d 99, 102 (4th Cir.1990), the Fourth Circuit clearly held that "laches is one of the affirmative defenses generally allowable under Fed.R.Civ.P. 8(c), although it is properly relevant only where the claims presented may be characterized as equitable, rather than legal." [7] *See also United States v. Smithfield Foods, Inc.,* 969 F.Supp. 975, 986 (E.D.Va.1997) (declining to apply the doctrine of laches because defendant was about to act as plaintiff initially sought in its prayer for injunctive relief, and plaintiff's claims would thus become primarily legal).

In the present action, plaintiff's tort claims may not be characterized as equitable, as the only relief she seeks is monetary, rather than injunctive. Defendants have not raised any arguments to the contrary. Therefore, the doctrine of laches is an inappropriate basis for the dismissal of Counts II and III.

## D) Intra–Corporate Immunity and the Conspiracy Claim

Plaintiff alleges in Count II that Irwin and the individual defendants conspired to interfere with her contractual relationship with Irwin. All defendants move to dismiss Count II, arguing that under the intra-corporate immunity doctrine, individual agents cannot conspire with their corporate employer as a matter of law. Plaintiff contends that the intra-corporate immunity doctrine does not bar her claim because her factual allegations trigger the "personal stake exception." We disagree with plaintiff and will therefore dismiss Count II for failure to state a claim. [8]

■ The Virginia Supreme Court in *Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797 (1985), has clearly held that a corporate party may be liable in tort for conspiracy to breach its own contract. However, such a conspiracy cannot exist unless there is at least one conspirator who was *not* a party to the contract.

> In Virginia, an action in tort lies against those who conspire to induce the breach of a contract. The plaintiff must establish that there was a conspiracy to procure the breach of contract and that pursuant to such conspiracy the contract was breached. Of course, there must be two persons to comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself. *Thus, a third party is necessary to create an actionable conspiracy to induce a breach of contract.*

229 Va. 534, 540–41, 331 S.E.2d 797 (1985) (citations omitted) (emphasis added). [9]

**7.** The cases defendants cite as examples of application of the doctrine of laches in this circuit are distinguishable from the present action. In *Marshall v. Meadows,* the district court barred a lawsuit due to laches, but those plaintiffs sought declaratory, not monetary, relief with regard to the purported unconstitutionality of an open primary law. 921 F.Supp. 1490, 1491 (E.D.Va.1996). *Giddens v. Isbrandtsen,* decided twenty-four years before *White v. Daniel,* involved a maritime claim, which, although at law, is subject to the "preference" of admiralty for the "equity rule of laches." 355 F.2d 125, 126 (4th Cir. 1966).

**8.** Virginia has long recognized a cause of action against those who conspire to breach their own contracts. *See CaterCorp, Inc. v. Catering Concepts, Inc.,* 246 Va. 22, 28, 431 S.E.2d 277 (1993); *Elliott v. Shore Stop, Inc.,* 238 Va. 237, 246, 384 S.E.2d 752 (1989) (one can conspire to breach his own contract).

**9.** *See also Stauffer v. Fredericksburg Ramada, Inc.,* 411 F.Supp. 1136 (E.D.Va.1976) ("there

■ Therefore, under controlling precedent, Irwin can conspire to induce breach of its own contract with plaintiff, provided plaintiff alleges that an independent third party was a coconspirator. However, as defendants argue, plaintiff has failed to allege an independent third party conspirator because a corporation and its agents are regarded as a single entity under the intra-corporate immunity doctrine, which is premised on the principal that a corporation and its agents are a single entity. *Perk v. Vector Resources Group, Ltd.*, 253 Va. 310, 317, 485 S.E.2d 140 (1997) (where defendants shared principal-agent or employer-employee relationship, they were not separate entities for purposes of alleged conspiracy); *See also Haigh v. Matsushita Elec. Corp. of Am.*, 676 F.Supp. 1332, 1349 (E.D.Va.1987) (employee acting within scope of his duties is deemed an extension of employer, and cannot be labeled third party); *Fox v. Deese*, 234 Va. 412, 428–29, 362 S.E.2d 699 (1987) (where plaintiff alleged conspiracy between employer and employees, must make factual determination of whether employees where acting outside their employment). In light of this precedent, if the individual defendants were acting within the scope of their employment with Irwin during the alleged conspiracy, plaintiff has insufficiently alleged a conspiracy. That is, she has alleged a conspiracy of one, a legal impossibility. *Perk*, 253 Va. at 317, 485 S.E.2d 140; *Griffith v. Electrolux Corp.*, 454 F.Supp. 29, 32 (E.D.Va.1978).[10]

Plaintiff has not argued that the individual defendants were acting outside the scope of their employment during the alleged conspiracy. Instead, she argues that defendants "participated in the conspiracy for their personal gain by acquiring [plaintiff's] construction loan business," therefore, they qualify for the "personal stake exception" to the intra-corporate immunity doctrine.

■ Defendants correctly argue that plaintiff cannot cite to any authority recognizing that the personal stake exception applies to the tort of conspiracy to induce breach of contract. However, we need not decide today whether the personal stake exception applies to Virginia's conspiracy tort because we find that, even if it did apply, plaintiff has insufficiently alleged facts to avail herself of the exception.[11] The personal stake exception was first recognized by the Fourth Circuit in *Greenville Pub. Co. v. Daily Reflector, Inc.*, 496 F.2d 391 (4th Cir.1974). In *Greenville*, the plaintiff alleged several anti-trust violations, including a violation under Section 1 of the Sherman Act. Specifically, the plaintiff claimed that a conspiracy existed between the defendant corporation and an individual defendant, who served as president, director and stockholder of the corporation. *Id.* at 399. The Fourth Circuit found that plaintiff had sufficiently alleged a conspiracy, despite the intra-corporate immunity doctrine, because: "an exception may be justified when the officer has an independent personal stake in achieving

must be a person not a party to the contract among the conspirators in order to satisfy the elements" of conspiracy to induce breach of contract); *Elliott v. Shore Stop, Inc.*, 238 Va. 237, 246, 384 S.E.2d 752 (1989) (must allege independent third party was part of conspiracy to induce breach of contract to which coconspirator was party).

**10.** *See also Marmott v. Maryland Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir.1986) (where complaint named two individuals and their company, plaintiff failed to allege conspiracy under Virginia statute "because a conspiracy between a corporation and its agents, acting within the scope of their employment, is a

legal impossibility"); *Sunsport, Inc. v. Barclay Leisure, Ltd.*, 984 F.Supp. 418, 423–24 (E.D.Va.1997) (plaintiff suing a corporation and two of its employees is essentially suing one actor, thus insufficiently alleging conspiracy under Virginia statute).

**11.** The Fourth Circuit suggested in *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir.1985), that the applicability of the intra-corporate immunity doctrine and its attendant exceptions is context-dependent. The Court emphasized the anti-trust origins of the doctrine, and extended it to the civil rights context only after identifying precedent to do so.

the corporation's illegal objective." *Id.* Plaintiff had alleged that the individual defendant had a separate affiliation with an advertising newspaper, and, due to that affiliation, he would personally benefit from destroying plaintiff's business. *Id.* These factual allegations were found sufficient to sustain plaintiff's cause of action at the summary judgment phase. *Id.*

By implication in *Greenville* and made explicit in *Oksanen v. Page Memorial Hosp.*, 945 F.2d 696 (4th Cir.1991), the Fourth Circuit has signaled that the personal stake exception is a limited one. *See Oksanen*, 945 F.2d at 705 (noting the criticism since *Greenville* that the exception threatens to swallow the rule, and therefore "declin[ing] to extend the personal stake exception beyond the rationale underlying the Greenville decision"). The exception has only been applied where the individual defendants had a personal stake independent of their relationship with the alleged co-conspirator corporate defendant. *Selman v. American Sports Underwriters, Inc.*, 697 F.Supp. 225, 239 (W.D.Va.1988), is instructive on this point:

> The court finds that this 'independent personal stake' exception must not be interpreted in too broad a manner or it will consume the entire intra corporate immunity doctrine. Certainly, under the most permissive interpretation of its language, an employee or agent of a corporation would always meet the exception since he would surely have an independent personal stake in the health and profitability of the corporation. Such an interpretation is overbroad. Instead, this court will follow the Fourth Circuit's implicit suggestion that the exception was meant to apply to facts such as those of Greenville Publishing. Here, the conspirator gained a direct personal benefit from the conspiracy, a benefit wholly separable from the more general and indirect corporate benefit always present under the circumstances surrounding virtually any alleged conspiracy.

According to plaintiff, the individual defendants had a personal stake in the increased commissions available to them after her termination. We find this pleading insufficient because it does not allege that defendants had a stake in her termination independent of their relationship with Irwin. To the contrary, any "personal stake" defendants had in increased commissions was incidental to their employment relationship with Irwin because their commissions were determined and paid by Irwin.

Due to the limited nature of the personal stake exception and plaintiff's failure to allege facts justifying its application here, we find that it does not apply. Therefore, under the doctrine of intra corporate immunity, plaintiff has failed to state a claim upon which relief can be granted in Count II. Count II is therefore dismissed as to all defendants.

*E) Proper Pleading of Tortious Interference*

 Defendant Irwin argues that Count III, tortious interference with prospective business, should be dismissed for failure to state a claim. In Virginia, the elements of this tort are (1) the existence of a valid contractual relationship or business expectancy, (2) the knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing the breach or termination of the relationship, (4) resultant damage to the party whose relationship or expectancy has been disrupted and (5) interference by improper methods. *Peterson v. Cooley*, 142 F.3d 181 (4th Cir.1988). Defendant contends that plaintiff has failed to allege facts that would satisfy the third and fifth elements of the tort. According to defendant, the third element is not satisfied because plaintiff has not alleged any action on the part of Irwin. In response, plaintiff references her allegation that the individual defendants were acting "individually, and with the knowledge and on behalf of [Irwin]."

With regard to the fifth element, defendant maintains that plaintiff has not alleged any improper methods by Irwin. Plaintiff responds that her allegations that defendants provided false and misleading information about her termination and how she serviced her loans are sufficient instances of use of improper methods to satisfy this element. Giving plaintiff the benefit of the doubt, and mindful that under Fed.R.Civ.P. 8(a) notice pleading is all that is required in federal court, we will deny Irwin's Motion to Dismiss Count III. Although the factual allegations are extremely vague, plaintiff has alleged all the necessary elements for the claim.

### III. CONCLUSION

For the aforementioned reasons, the Motion to Dismiss on behalf of Larry Vida, Scott Barr and Rick Martin will be GRANTED in part and DENIED in part; and Defendant Irwin Mortgage Corporation's Motion to Dismiss will be GRANTED in part and DENIED in part. Count I will be dismissed as to defendants Vida and Barr; Count II will be dismissed as to all defendants; and Count III will not be dismissed as to defendant Irwin. An appropriate Order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, the Motion to Dismiss on Behalf of defendants Larry Vida, Scott Barr, and Rick Martin is GRANTED IN PART and DENIED IN PART, and it is hereby

ORDERED that Counts I and II be and are DISMISSED as against defendants Vida, Barr and Martin. Count III remains pending against these defendants.

Defendant Irwin Mortgage Corporation's Motion to Dismiss is also GRANTED IN PART and DENIED IN PART, and it is hereby

ORDERED that Count II be and is DISMISSED, leaving Counts I and III pending against defendant Irwin Mortgage Corporation.

The Clerk is directed to forward copies of this Order to counsel of record.