MARCHIORO ET AL. *v.* CHANEY ET AL.

No. 78–647.  Argued March 26, 1979—Decided June 4, 1979

*Charles A. Goldmark* argued the cause and filed briefs for appellants.

*Daniel Brink* argued the cause for appellees. With him on the brief was *Winship A. Todd, Jr.*

MR. JUSTICE STEVENS delivered the opinion of the Court.

Since 1927, a Washington statute has required each major political party to have a State Committee consisting of two persons from each county in the State.[1] The question pre-

---

[1] Washington Rev. Code § 29.42.020 (1976) provides:

"*State Committee.* The state committee of each major political party shall consist of one committeeman and one committeewoman from each county elected by the county committee at its organization meeting. It shall have a chairman and vice chairman who must be of opposite sexes. This committee shall meet during January of each odd-numbered year for the purpose of organization at a time and place designated by a sufficient notice to all the newly elected state committeemen and committeewomen by the authorized officers of the retiring committee. For the purpose of this section a notice mailed at least one week prior to the date of the meeting shall constitute sufficient notice. At its organizational meeting it shall elect its chairman and vice chairman, and such officers as its bylaws may provide, and adopt bylaws, rules and regulations. It shall have power to:

"(1) Call conventions at such time and place and under such circumstances and for such purposes as the call to convention shall designate. The manner, number and procedure for selection of state convention delegates shall be subject to the committee's rules and regulations duly adopted;

"(2) Provide for the election of delegates to national conventions;

"(3) Fill vacancies on the ticket for any federal or state office to be voted on by the electors of more than one county;

"(4) Provide for the nomination of presidential electors; and

"(5) Perform all functions inherent in such an organization.

"Notwithstanding any provision of this [1972 amendatory act], the committee shall not set rules which shall govern the conduct of the actual proceedings at a party state convention."

Between 1909 and 1927, the statute provided for one member to be elected from each county.

A "major political party" is defined as "a political party of which at least one nominee for president, vice president, United States senator, or a statewide office received at least five percent of the total vote cast at the last preceding state general election in an even-numbered year . . . ." Wash. Rev. Code § 29.01.090 (Supp. 1977).

sented by this appeal is whether the Washington Supreme Court correctly held that this statute does not violate the First Amendment of the United States Constitution.[2]

The powers of the Democratic State Committee are derived from two sources: the authorizing statute and the Charter of the Democratic Party of Washington. The statute gives the State Committee the power to call conventions, to provide for the election of delegates to national conventions and for the nomination of Presidential electors, and to fill vacancies on the party ticket.

The principal activities performed by the State Committee are authorized by the Charter of the Democratic Party of Washington. The Charter provides that the State Committee shall act as the party's governing body when the Convention is in adjournment.[3] And it gives the State Committee authority to organize and administer the party's administrative apparatus, to raise and distribute funds to candidates, to conduct workshops, to instruct candidates on effective campaign procedures and organization, and generally to further the party's objectives of influencing policy and electing its adherents to public office.[4]

Under both party rules and state law, the State Convention rather than the State Committee is the governing body of the party. The Charter explicitly provides that the Convention is "the highest policy-making authority within the

_____

[2] The First Amendment provides in pertinent part:

"Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The freedom protected against federal encroachment by the First Amendment is entitled under the Fourteenth Amendment to the same protection from infringement by the States. *Williams* v. *Rhodes,* 393 U. S. 23, 30–31.

[3] Charter, Art. IV (G)(1), App. 10.

[4] Charter, Arts. IV (G)(1), (2), (5), App. 10–11; Charter, Art. VII (C)(1), App. 19.

State Democratic Party." [5]   And the State Supreme Court has unequivocally held that the "state convention of a major political party is the ultimate repository of statewide party authority. . . . [T]he state convention is implicitly empowered to establish the permanent state organization of the party, create committees, delegate authority, and promulgate, adopt, ratify, amend, repeal or enforce intraparty statewide rules and regulations." [6]

In 1976, the State Democratic Convention adopted a Charter amendment directing that the State Committee include members other than those specified by state statute. The Charter amendment provided that in addition to the two delegates from each of the State's 39 counties, there should be one representative elected from each of the State's 49 legislative districts. Pursuant to this Charter amendment new legislative district representatives were elected to serve on the State Committee. At the January 1977 meeting of the State Committee, a motion to seat these newly elected representatives was ruled out of order, apparently in reliance on the statutory definition of the composition of the Committee. [7]

Thereafter, members and officers of the State Democratic Party, including four who had been elected as legislative district representatives, instituted this action for declaratory and injunctive relief in the King County Superior Court. Among their contentions was a claim that the statutory restriction on the composition of the Democratic State Committee violated their rights to freedom of association protected by the First and Fourteenth Amendments. [8]

---

[5] Charter, Art. V (F) (5), App. 15.

[6] *King County Republican Central Committee* v. *Republican State Committee,* 79 Wash. 2d 202, 211–212, 484 P. 2d 387, 392 (1971). See also 90 Wash. 2d 298, 313, 582 P. 2d 487, 496 (1978) (case below).

[7] An appeal from that ruling was defeated by a vote of 56 to 17. App. 4–5.

[8] Appellants also challenged the requirement of Wash. Rev. Code

The Superior Court granted appellants' motion for a partial summary judgment. On appeal, a divided State Supreme Court reversed that part of the trial court's judgment that invalidated the statutory definition of the central Committee.[9] The state court reasoned that although " 'substantial burdens' " on the right to associate for political purposes are invalid unless " 'essential to serve a compelling state interest,' "[10] these appellants failed to establish that this statute had imposed any such burden on their attempts to achieve the objectives of the Democratic Party. Since this initial burden had not been met, the court upheld the constitutionality of the challenged statute.

We noted probable jurisdiction, 439 U. S. 1044, and now affirm the judgment of the Washington Supreme Court.

The requirement that political parties form central or county committees composed of specified representatives from each district is common in the laws of the States.[11] These

---

§§ 29.42.020 and 29.42.030 (1976) that the two persons elected as county delegates be one man and one woman. Appellants argued that this requirement violates the Washington State Equal Rights Amendment, Wash. Const., Art. XXXI. The Washington Supreme Court rejected the claim, 90 Wash. 2d, at 308, 582 P. 2d, at 493. Appellants do not seek review here of the "one man and one woman" requirements of the statute. Nor do they raise any claim based on the Equal Protection Clause of the Fourteenth Amendment. See n. 12, *infra*.

[9] 90 Wash. 2d 298, 582 P. 2d 487 (1978).

[10] *Id.*, at 309, 582 P. 2d, at 493, quoting *Storer* v. *Brown*, 415 U. S. 724, 729.

[11] In 23 States, political parties are required by state law to establish state central committees composed of an equal number of committee members from each unit of representation. See Cal. Elec. Code Ann. §§ 8660, 9160 (West Supp. 1979); Fla. Stat. § 103.111 (1977); Idaho Code § 34–504 (Supp. 1978); Ind. Code § 3–1–2–1 (1976); Iowa Code § 43.111 (1979); Kan. Stat. Ann. § 25–3804 (Supp. 1978); Mass. Gen. Laws Ann., ch. 52, § 1 (West 1975); Mich. Comp. Laws § 168.597 (1970); Miss. Code Ann. § 23–1–3 (Supp. 1978); Mo. Rev. Stat. § 115.621 (1978); Mont. Rev. Codes Ann. § 23–3403 (Supp. 1977); Nev. Rev. Stat. § 293.153 (1975); N. J. Stat. Ann. § 19:5–4 (West Supp. 1979); N. D. Cent. Code § 16–17–

laws are part of broader election regulations that recognize the critical role played by political parties in the process of selecting and electing candidates for state and national office. The State's interest in ensuring that this process is conducted in a fair and orderly fashion is unquestionably legitimate; "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer* v. *Brown*, 415 U. S. 724, 730. That interest is served by a state statute requiring that a representative central committee be established, and entrust-

---

11 (1971); Ohio Rev. Code Ann. § 3517.03 (1972); S. C. Code § 7–9–90 (1976); S. D. Comp. Laws Ann. § 12–5–16 (1975); Tenn. Code Ann. § 2–1304 (Supp. 1978); Tex. Elec. Code Ann., Art. 13.38 (Vernon Supp. 1978); Vt. Stat. Ann., Tit. 17, § 730 (1968); Wash. Rev. Code § 29.42.020 (1976); W. Va. Code § 3–1–9 (1979); Wyo. Stat. §§ 22–4–105—22–4–110 (1977). Election laws in five States establish state party central committees in which the number of committee members from each unit of representation bears a rough relationship to party membership. See Ariz. Rev. Stat. Ann. § 16–233 (1975); Colo. Rev. Stat. § 1–14–108 (2) (Supp. 1976); La. Rev. Stat. Ann. § 18:285 (1) (West Supp. 1979); Ore. Rev. Stat. § 248.075 (1977); Utah Code Ann. § 20–4–2 (1976).

Political parties are required to establish county central committees comprised of an equal number of committee members from each unit of representation by state law in 21 States. See Cal. Elec. Code Ann. §§ 8820–8825, 9320–9325 (West 1977) (limited to certain counties); Colo. Rev. Stat. § 1–14–108 (1) (1973); Fla. Stat. § 103.111 (1977); Idaho Code § 34–502 (Supp. 1978); Ind. Code § 3–1–2–1 (1976); Kan. Stat. Ann. § 25–3802 (1973); La. Rev. Stat. Ann. § 18:285 (9) (West Supp. 1979); Md. Ann. Code, Art. 33, § 11–2 (Supp. 1978); Mass. Gen. Laws Ann., ch. 52, § 9 (West 1975); Mich. Comp. Laws § 168.599 (1970); Miss. Code Ann. § 23–1–3 (Supp. 1978); Mo. Rev. Stat. § 115.607 (1978); Mont. Rev. Codes Ann. §§ 23–3401, 23–3402 (Supp. 1977); N. J. Stat. Ann. § 19–5–3 (West Supp. 1979); Ohio Rev. Code Ann. § 3517.03 (1972); S. C. Code § 7–9–60 (1976); S. D. Comp. Laws Ann. §§ 12–5–13, 12–5–14 (1975); Tex. Elec. Code Ann., Art. 13.18 (Vernon Supp. 1978); Wash. Rev. Code § 29.42.030 (1976); W. Va. Code § 3–1–9 (1979); Wis. Stat. § 8.17 (1975).

See Note, Equal Representation of Party Members on Political Party Central Committees, 88 Yale L. J. 167, 168–169, and nn. 5–6 (1978).

ing that committee with authority to perform limited functions, such as filling vacancies on the party ticket, providing for the nomination of Presidential electors and delegates to national conventions, and calling statewide conventions. Such functions are directly related to the orderly participation of the political party in the electoral process.

Appellants have raised no objection to the Committee's performance of these tasks.[12] Rather, it is the Committee's other activities—those involving "purely internal party decisions," Brief for Appellants 5 n. 11—that concern appellants and give rise to their constitutional attack on the statute.

The Committee does play a significant role in internal

---

[12] Since appellants do not claim that these statutory requirements impose any impermissible burdens, we have no occasion to consider whether whatever burdens they do impose are justified by the legitimate state interests served by these requirements. By appellants' own admission, the Committee's electoral functions are performed rarely; moreover, when they are performed, they conform with the one-person, one-vote principle.

"Although the state committee on rare occasions performs certain ballot access functions, see RCW 29.18.150 and 29.42.020 (filling vacancies on certain party tickets and nominating presidential electors) and Wash. Const. art. II, § 15 (selecting nominees for certain interim legislative positions), when it does so it is constitutionally required to comply with the principle of one-person, one-vote. See, e. g., Seergy v. Kings County Republican County Comm., 459 F. 2d 308, 313–14 (2d Cir. 1972); Fahey v. Darigan, 405 F. Supp. 1386, 1392 (D. R. I. 1975). The state committee has recognized this and has stipulated to the entry of an injunction ordering that the state committee be:

"enjoined from filling vacancies on the Democratic ticket for any federal or state office to be voted on by the electors of more than one county or selecting Democratic nominees for interim legislative appointments to represent multi-county districts by any method that contravenes the one-person, one-vote rule.

"Cunningham v. Washington State Democratic Comm., Civ. No. C75–901 (WD Wash., permanent injunction entered Nov. 28, 1977). As a result of this injunction, RCW 29.42.020—which results in gross deviations from one-person, one-vote—has been superseded insofar as applied to the state committee when it performs electoral functions." Brief for Appellants 5 n. 11.

party affairs: The appellants' description of its activities makes this clear:

> "Between state conventions, the Democratic State Committee is the statewide party governing body. It meets at least four times each year, exercises the party's policy-making functions, directs the party's administrative apparatus, raises and distributes funds to Democratic candidates, conducts workshops to instruct candidates on effective campaign procedures and organization, and seeks generally to further the party's objectives of influencing policy and electing its adherents to public office. Insofar as is relevant here, the state committee is purely an internal party governing body." *Id.*, at 4–5 (footnotes omitted).

None of these activities, however, is required by statute to be performed by the Committee.[13] With respect to each, the source of the Committee's authority is the Charter adopted by the Democratic Party.[14]

In short, all of the "internal party decisions" which appellants claim should not be made by a statutorily composed Committee are made not because of anything in the statute,

---

[13] In addition to its enumerated functions, the Committee is authorized by Wash. Rev. Code § 29.42.020 (1976) to "[p]erform all functions inherent in such an organization." See n. 1, *supra.* The Committee's role in internal party affairs, however, is clearly not "inherent" in its performance of the limited electoral functions authorized by statute.

[14] Indeed, it is the Charter provisions, rather than the state statute, which appellants themselves cite as authority for their description of the Committee activities at issue here. See Brief for Appellants 4 nn. 5–10. Thus, it is Art. IV (G)(1) of the Charter which provides that the Committee is the statewide governing body, shall raise funds for candidates, and shall exercise the party's policymaking functions. And it is subsection (2) of that same Article which authorizes the Committee to direct the party's administrative apparatus, while subsection (5) requires it to meet at least four times per year. Finally, the source of the Committee's authority to conduct workshops for candidates is found in Art. VII (C)(1) of the Charter.

but because of delegations of authority from the Convention itself. Nothing in the statute required the party to authorize such decisionmaking by the Committee; as far as the statutory scheme is concerned, there is no reason why the Convention could not have created an entirely new committee or one, for example, composed of members of the State Committee and such additional membership as might be desired to perform the political functions now performed by the State Committee. The fact that it did not choose such an alternative course is hardly the responsibility of the state legislature.

The answer to appellants' claims of a substantial burden on First Amendment rights, then, turns out to be a simple one. There can be no complaint that the party's right to govern itself has been substantially burdened by statute when the source of the complaint is the party's own decision to confer critical authority on the State Committee. The elected legislative representatives who claim that they have been unable to participate in the internal policymaking of the Committee should address their complaint to the party which has chosen to entrust those tasks to the Committee, rather than to the state legislature. Instead of persuading us that this is a case in which a state statute has imposed substantial burdens on the party's right to govern its affairs, appellants' own statement of the facts establishes that it is the party's exercise of that very right that is the source of whatever burdens they suffer.[15]

The judgment of the Washington Supreme Court is affirmed.

*It is so ordered.*

MR. JUSTICE POWELL took no part in the consideration or decision of this case.

---

[15] *Cousins* v. *Wigoda*, 419 U. S. 477, upon which appellants place their primary reliance, does not support their claim here. In *Cousins*, unlike this case, there was a substantial burden on associational freedoms. This fact alone distinguishes the two cases, and renders *Cousins* inapposite.