Nick A. Tomasic, District Attorney Office of the District Attorney of the 29th Judicial District Wyandotte County Judicial Complex 710 N. 7th Kansas City, Kansas 66101
Dear Mr. Tomasic:
As District Attorney for the 29th Judicial District, you request our opinion regarding the appointment of precinct committeemen and committeewomen. Specifically, you ask whether a provision of K.S.A. 25-3801 violates the First and Fourteenth Amendments to the United States Constitution. If it is determined that the provision does not violate the Constitution, you ask whether appointments made by the chairman of the Wyandotte County Democratic Central Committee following the primary election, but prior to reorganization of the party committee, were legal.
Vacancies existed in some of the precinct committee positions of the Wyandotte County Democratic Central Committee prior to the primary election conducted in August, 1998. Individuals did not file as candidates for the vacant precinct committee positions so blank lines for write-in votes were printed on the ballots. In some of the precincts, write-in votes were cast for the precinct committee positions. However, it appears that in most of the precincts the persons receiving write-in votes did not receive the required number of write-in votes necessary for election as precinct committeeman or committeewoman and the positions remained vacant.[1] Following the primary election, but prior to election or reelection of the chairperson of the Central Committee, the presiding chairperson appointed persons to fill the committee positions which received an insufficient number of write-in votes cast at the primary election. The precinct committeemen and committeewomen, including those persons who were newly appointed, then elected a chairperson.
K.S.A. 25-3801 addresses appointment of precinct committeemen and committeewomen, including establishing qualifications for persons serving in such positions and the manner in which vacancies to precinct positions are to be filled. The statute states in part:
 "Except as provided in subsection (b), vacancies occurring in the office of precinct committeeman or committeewoman shall be promptly filled by appointment by the county chairperson, except that any vacancy which occurs because the party had no candidate at such primary election shall not be filled until the county central committee has elected or reelected its chairperson under K.S.A. 25-3802 and amendments thereto."[2]
The United States Supreme Court has in Timmons v. Twin Cities AreaNew Party,[3] set forth the general principles regarding a state's authority to regulate parties, elections, and ballots.
 "The First Amendment protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas. As a result, political parties' government, structure, and activities enjoy constitutional protection.
 "On the other hand, it is also clear that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder.
 "When deciding whether a State election law violates First
and Fourteenth Amendment associational rights, [the Court] must weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. Regulations imposing severe burdens on [a political party's] rights must be narrowly tailored and advance a compelling State interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms."[4]
The Court has distinguished between State regulations which are enacted for the purpose of ensuring that elections are fair and honest and those regulations which affect only the internal party governance.[5] In Tashjian v. Republican Party ofConnecticut,[6] and Eu v. San Francisco Democratic CentralCommittee,[7] the United States Supreme Court reviewed State laws which had the effect of regulating the internal structure and operation of a political party. In 1955, the State of Connecticut instituted a primary election system under which only registered members of a political party were permitted to vote in the party's primary election.[8] In 1984, the Republican Party of Connecticut adopted a rule which authorized independent voters to cast a ballot in the Republican Party's primary election.[9]
The Party and individuals challenged the State law, alleging infringement upon the "right to freedom of association for the advancement of common political objectives guaranteed by the First
and Fourteenth Amendments to the United States Constitution."[10] The State maintained that the law was "a narrowly tailored regulation which advance[d] the State's compelling interests by ensuring the administrability of the primary system, preventing raiding, avoiding voter confusion, and protecting the responsibility of party government."[11] InTashjian, the Court rejected the State's asserted interests.
 "The State argues that its statute is well designed to save the Republican Party from undertaking a course of conduct destructive of its own interests. But on this point even if the State were correct, a State, or a court, may not constitutionally substitute its own judgment for that of the Party. The Party's determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution. And as is true of all expressions of First Amendment freedoms, the courts may not interfere on the ground that they view a particular expression as unwise or irrational.
 "We conclude that the State's enforcement, under these circumstances, of its closed primary system burdens the First Amendment rights of the Party. The interests which the [State] adduces in support of the statute are insubstantial, and accordingly the statute, as applied to the Party in this case, is unconstitutional."[12]
Less than three years later, the Supreme Court issued its opinion in Eu, invalidating provisions of the California Elections Code. The political parties in California were subject to heavy regulation by the State.[13] The Elections Code prohibited the official governing body of the political parties from endorsing candidates prior to the primary election.[14] The State maintained that the prohibition was justified by the State's compelling interest in stable government, hence a compelling interest in party stability.[15] The State further asserted that the ban was necessary to protect voters from confusion and undue influence.[16] The Court rejected both arguments, determining that the State had no compelling interest in preserving party unity during a primary, nor could restricting the flow of information to the electorate under the circumstances presented serve the State's interest.[17] "Because the ban on primary endorsements by political parties burdens political speech while serving no compelling governmental interest," the Court held the prohibition violated the First and Fourteenth Amendments to the U.S. Constitution.[18]
The Court then reviewed California laws which regulated the internal governance of the political parties by establishing the size and composition of the state central committees, governing the selection and removal of committee members, fixing the maximum term of office for the chair of the state central committee, and requiring that the chair rotate between residents of northern and southern California.[19] The Court determined that the associational rights at stake in Eu were much stronger than those credited in Tashjian.[20]
 "Because the challenged laws burden the associational rights of political parties and their members, the question is whether they serve a compelling state interest. A State indisputably has a compelling interest in preserving the integrity of its election process. Rosario v. Rockefeller, 410 U.S. 752, 761, 36 L.Ed.2d 1, 93 S.Ct. 1245 (1973). Toward that end, a State may enact laws that interfere with a party's internal affairs when necessary to ensure that elections are fair and honest. Storer v. Brown, 415 U.S., at 730, 39 L.Ed.2d 714, 94 S.Ct. 1274. For example, a State may impose certain eligibility requirements for voters in the general election even though they limit parties' ability to garner support and members. See, e.g., Dunn v. Blumstein, 405 U.S., at 343-44, 31 L.Ed.2d 274, 92 S.Ct. 995 (residence requirement); Oregon v. Mitchell, 400 U.S. 112, 118, 27 L.Ed.2d 272, 91 S.Ct. 260 (1970) (age minimum); Kramer v. Union Free School District No. 15, 395 U.S. 621, 625, 23 L.Ed.2d 583, 89 S.Ct. 1886 (1969) (citizenship requirement). We have also recognized that a State may impose restrictions that promote the integrity of primary elections. See, e.g., American Party of Texas v. White, 415 U.S., at 779-80, 39 L.Ed.2d 744, 94 S.Ct. 1296 (requirement that major political parties nominate candidates through a primary and that minor parties nominate candidates through conventions); id., at 785-86, 39 L.Ed.2d 744, 94 S.Ct. 1296 (limitation on voters' participation to one primary and bar on voters both voting in a party primary and signing a petition supporting an independent candidate); Rosario v. Rockefeller, supra
(waiting periods before voters may change party registration and participate in another party's primary); Bullock v. Carter, 405 U.S., at 145, 31 L.Ed.2d 92, 92 S.Ct. 849
(reasonable filing fees as a condition of placement on the ballot). None of these restrictions, however, involved direct regulation of a party's leaders. Rather, the infringement on the associational rights of the parties and their members was the indirect consequence of laws necessary to the successful completion of a party's external responsibilities in ensuring the order and fairness of elections."[21]
The State of California asserted that "the challenged laws serve[d] a compelling `interest in the "democratic management of the political party's internal affairs."'"[22] The Court noted that regulation of the parties' internal affairs was not required "to prevent the derogation of the civil rights of party adherents."[23] Further, as noted in Tashjian, the State "ha[d] no interest in `protect(ing) the integrity of the Party against the Party itself.'"[24] Because the State was unable to show that its regulation of the political parties' internal affairs was necessary to ensure an election that was orderly and fair, the State was unable to justify its regulation. The Court held that the challenged election laws violated the associational rights of the political parties and their members.[25]
In response to the Court's decision in Eu, the Kansas Attorney General's office reviewed the provisions of Article 38 of Chapter 25 of the Kansas Statutes Annotated. The Attorney General determined that a number of the provisions contained in Article 38 of Chapter 25 resulted in unconstitutional regulation of the political parties' internal governance.[26] Upon the recommendation of Attorney General Stephan, the Legislature repealed all of the statutes in Article 38 of Chapter 25 of the Kansas Statutes Annotated, except K.S.A. 25-3801.[27]
The provision in question regulates the timing of appointment of committeemen and committeewomen. It also may have the effect of limiting a chairperson to a two-year term. Through the provision, the State is regulating an aspect of the internal governance of the political parties. The provision, therefore, must be necessary to ensure that elections are orderly and fair.
In Kansas, the county central committees of the political parties are authorized to fill vacancies in party candidacies.[28]
The committees also serve a role in filling vacancies in public office.[29] Requiring that a representative committee perform the functions entrusted to the political parties is directly related to the orderly participation of the parties in the electoral process.[30] Therefore, the State has a legitimate interest in ensuring that a chairperson is not able to appoint new committeemen and committeewomen at a time when the appointments may result in a committee that is not representative and which may influence the outcome of the selection of persons to vacancies in public office. That interest, however, is met through subsection (b) of K.S.A. 25-3801.[31] The provision in question, a portion of subsection (a) of K.S.A. 25-3801, has the effect of prohibiting appointment of committeemen and committeewomen at times when there may be no vacancies in public office and thus no statutory role for the committee to perform. The provision is not narrowly tailored to serve the legitimate interests of the State.
The provision also may effectively limit a chairperson to a two-year term. Following the primary election, the chairperson is subject to election or reelection. Until such time as the election or reelection occurs, no vacancies in the committee may be filled. Should the political party adopt a rule providing for a longer term for the chairman, the party runs the risk that the membership in the committee may be depleted to such a point that the committee may no longer be able to perform its party duties. In Eu, the Court determined the State could enact a term limitation only if the limitation was necessary for the orderly and fair conduct of elections. This provision does not serve such a purpose.
Committeemen and committeewomen elected in the primary election may better reflect the views and opinions of the party membership. It may be in the best interest of the parties for committeemen and committeewomen selected by the party membership, rather than appointed by a chairperson who no longer reflects the parties' viewpoints, elect or reelect a chairperson. However, as determined in Tashjian, a State has no interest in protecting the integrity of political parties against the parties themselves and cannot substitute its judgment for that of the parties regarding the desirability of a particular party structure.
K.S.A. 25-3801(a) provides that no committeeman or committeewoman may be appointed to fill a vacancy occurring because the political party had no candidate at the primary election until after the election or reelection of the county central committee's chairperson. The provision regulates the internal governance of the party and must, therefore, be narrowly tailored to serve a compelling State interest. In the absence of such interest, it violates the First and Fourteenth Amendment associational rights of political parties. Because the provision violates the First andFourteenth Amendments to the United States Constitution, the provision may not be applied to preclude the appointment of precinct committeemen and committeewomen until such time as the county chairperson has been subject to election or reelection.
A finding that the provision is unconstitutional does not necessarily invalidate the entire statute. Unconstitutional provisions may in some circumstances be severed from the unchallenged provisions. The test for determining whether a provision is severable is stated in State ex rel. Tomasic v.Unified Gov. of Wyandotte Co./Kansas City, 264 Kan. 293 (1998).
 "In Thompson v. K.F.B. Ins. Co., 252 Kan. 1010, 1023, 850 P.2d 773 (1993), we stated the test to be applied:
 "Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that the act would have been passed without the objectional [sic] portion and if the statute would operate effectively to carry out the intention of the legislature with such provision stricken, the remainder of the valid law will stand. Whether the legislature had provided for a severability clause is of no importance. Th[e] court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent."[32]
The Court provided further:
 "While it is undoubtedly true that a statute may be constitutional in one part, and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to, the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statute."[33]
The legislation which included the provision reviewed herein established a number of measures relating to the organization of political parties.[34] It was added to 1972 Substitute for Senate Bill No. 161 through amendments proposed by the House Committee on Elections and Fees and Salaries.[35] The legislative history of the enactment does not indicate that the provision was a condition of, a compensation for, or an inducement to, adoption of any other provision. Regulation of the political parties was achieved through other provisions of the act. Under these circumstances, it is determined the provision reviewed herein is severable from the remainder of K.S.A. 25-3801.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] See K.S.A. 1997 Supp. 25-213 (five write-in votes required for election).
[2] K.S.A. 25-3801.
[3] 520 U.S. ___, 137 L.Ed.2d 589, 117 S.Ct. ___ (1997).
[4] Timmons, 520 U.S. at ___, 137 L.Ed.2d at 597-98, (citations and internal quotation marks omitted).
[5] See Timmons, 520 U.S. at ___, 137 L.Ed.2d at 599.
[6] 479 U.S. 208, 93 L.Ed.2d 514, 107 S.Ct. 544 (1986).
[7] 489 U.S. 214, 103 L.Ed.2d 271, 109 S.Ct. 1013 (1989).
[8] Tashjian, 479 U.S. at 210.
[9] Id.
[10] Id. at 212.
[11] Id. at 217.
[12] Id. at 224-25.
[13] Eu, 489 U.S. at 216.
[14] Id.
[15] Id. at 227.
[16] Id. at 228.
[17] Id. at 227-28.
[18] Id. at 229.
[19] Id. at 218.
[20] Id. at 230.
[21] Id. at 231-32.
[22] Id. at 232.
[23] Id.
[24] Id.
[25] Id. at 233.
[26] See Minutes, House Committee on Elections, January 23, 1990; Minutes, Senate Committee on Elections, February 5, 1990.
[27] See L. 1990, Ch. 131, § 1.
[28] See K.S.A. 1997 Supp. 25-3904 (vacancy in candidacy for district office); 25-3904a (vacancy in candidacy for State Board of Education); K.S.A. 25-3905 (vacancy after primary election); 25-3906 (vacancy in candidacy occurring after filing deadline and prior to primary election).
[29] See K.S.A. 19-203 (county commissioner); 19-303 (county clerk); 19-504 (county treasurer); 19-715 (county attorney); 19-804 (sheriff); 19-1203 (register of deeds); K.S.A. 1997 Supp.25-3902 (district office other than judge of district court); 25-3902a (State Board of Education); K.S.A. 25-3903 (State Legislature or State Board of Education).
[30] Marchioro v. Chaney, 442 U.S. 191, 196-97,99 S.Ct. 2243, 60 L.Ed.2d 816 (1979).
[31] "(b) When a convention is to be held under article 39 (of chapter 25) of Kansas Statutes Annotated to fill a vacancy, no appointments shall be made under subsection (a) after notice calling the convention has been given until the convention has been held and the person to fill the vacancy has been elected by the convention."
[32] State ex rel. Tomasic v. Unified Gov. of WyandotteCo./Kansas City, 264 Kan. 293, 317, 339 (1998), quoting Sedlak v.Dick, 256 Kan. 779, 803 (1995) (internal quotation marks and citation omitted).
[33] Id. at 340 (internal quotation marks and citation omitted).
[34] L. 1972, Ch. 129.
[35] Journal of the House, February 18, 1972.