Larry **MILLER,** and 11th Senatorial District Republican Committee, Plaintiffs,

v.

Michael **BROWN,** in his official capacity as Chairman of the Virginia State Board of Elections, Barbara Hildenbrand, in her official capacity as Vice–Chairman of the Virginia State Board of Elections, and Jean R. Jensen, in her official capacity as Secretary of the Virginia State Board of Elections, Defendants.

No. CIV.A. 3:05CV266–HEH.

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 11, 2005.

Kenneth Thomas Cuccinelli, II, Gura & Day LLC, Fairfax, VA, Patrick Michael McSweeney, McSweeney & Crump, P.C., Richmond, VA, for Plaintiffs.

James Walter Hopper, James Christian Stuchell, Office of the Attorney General, Richmond, VA, for Defendants.

### MEMORANDUM OPINION

HUDSON, District Judge.

#### (Defendants' Motion to Dismiss)

THIS MATTER is before the Court on Defendants' Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In essence, the defendants contend that the matters at issue are not justiciable at this point in time. All parties have filed extensive memoranda of law in support of their respective positions. The Court heard oral argument on September 14, 2005.

### I. Background

In this suit for declaratory relief, Plaintiffs challenge the constitutionality of Section 24.2–530, Code of Virginia 1950, as amended. Section 24.2–530 provides, "All persons qualified to vote, pursuant to §§ 24.2–400 through 24.2–403, may vote at the primary. No person shall vote for the candidates of more than one party." The type of electoral process created by § 24.2–530 is what is commonly known as an "open primary" because it allows Republicans, Democrats and Independents alike to participate in the candidate selection process.

Plaintiffs maintain that the open primary created by § 24.2–530 violates the First Amendment to the United States Constitution, in that it interferes with the associational rights of each respective party, particularly the right to exclude members of the other party.

The pertinent facts are not in dispute. On June 4, 2004, the Republican Party of Virginia ("RPV") amended its plan of organization ("Party Plan"), effective June 5, 2006, to allow its affiliated committees to exclude voters from the Republican nomination process who have participated in the nomination of non-Republican party candidates during the preceding five (5) years. The 11th Senatorial District Republican Committee ("11th District Committee") is an affiliated committee eligible to exercise this local option under the amended Party Plan.

Subsequent to this rule change, on August 12, 2004, incumbent Senator Steve Martin ("Senator Martin") of the 11th Senatorial District of Virginia, selected a primary as his method of nomination for the 2005 Senatorial election cycle. See Va. Code § 24.2–400, et seq. Senator Martin expressed his preference for a primary by using a form prepared by the State Board

of Elections ("the Board") for the 2003 Senatorial Election. Senator Martin simply scratched out 2003 and inserted 2007 in its stead. The modified form was sent to the Board by letter dated January 17, 2005.

In response to Senator Martin's expression of preference and pursuant to § 24.2–509(b), on January 13, 2005, the 11th Senatorial District Republican Committee voted to hold a primary for the nomination of Senator Martin for the 2007 election cycle. In accordance with the amendment to the RPV's Party Plan, the 11th District Committee also chose to exclude voters who, in the past five (5) years, had previously voted in a Democratic party primary. The sole exception were voters who pledged to support the Republican party nominee in the general election.

On June 17, 2005, Plaintiff Larry Miller ("Miller"), in his capacity as Chairman of the Chesterfield County Republican Committee and the 11th District Committee, sent a letter to the Board advising them of the Committee's decision to implement the amendment to the RPV Party Plan and to exclude past Democratic voters from the primary.

In a written response dated February 9, 2005, the Secretary of the State Board of Elections, Jean Jensen ("Secretary Jensen"), advised Miller that:

> ... as the Republican Legislative District Chair ... you may take whatever actions you deem appropriate in compliance with the Party Plan to which you make reference. Under the provision of § 24.2–516, of the Code of Virginia, however, the State Board of Elections may accept notification of the selection of the primary method of nomination for the 2007 election ... no earlier than February 22, 2007, and no later than March 14, 2007.

.        .        .        .        .

I know of no ... provision of Title 24.2 wherein the General Assembly authorizes the State Board of Elections to implement the provisions of a particular political party plan that restricts the manner in which a voter may participate in the political party's primary.

.        .        .        .        .

Accordingly, unless you are able to point to a specific provision of Title 24.2 enacted by the General Assembly of Virginia that authorizes the State Board of Elections to restrict voting in any primary conducted in the 11th Senate District in 2007, the State Board of Elections will have to comply with the law of the Commonwealth at that time.

Pl.Ex. 4 (Letter from Jensen to Miller of 2/9/05).

Considering the foregoing letter to be an official action of the Board denying Plaintiffs' request to conduct a closed primary, Plaintiffs bring this lawsuit under 42 U.S.C. § 1983 against the defendants in their official capacities, for violating their right of free association under the First Amendment. Plaintiffs ask the Court to strike the statutory framework for the open primary under Va.Code § 24.2–530, as unconstitutional. At core and as a by-product of the declaratory relief sought here, Plaintiffs also seek to stake out the boundaries of the concept of free association in the context of the electoral process.

Before reaching the merits, the defendants contest the justiciability of Plaintiffs' claims at this point in time. Their facial attack is waged on two fronts. First, Defendants contend that Plaintiffs lack standing. Secondly, they argue that the issues are not ripe for adjudication at this point.

II. Analysis

The analytical framework for reviewing challenges to justiciability is well settled.

Justiciability is a critical element of this Court's Article III jurisdiction. "Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary,* 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991). "Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so." *Id.* at 316, 111 S.Ct. 2331. It is the responsibility of the complainant to demonstrate that he is a proper party to invoke judicial resolution of the dispute, and the exercise of the court's remedial powers. *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 546 n. 8, 106 S.Ct. 1326, 1334, 89 L.Ed.2d 501 (1986).

In order to ensure that the issues before the Court are part of a live dispute, in other words, an actual case or controversy, a litigant must prove standing as a prerequisite to advancing their claim. There are three (3) elements to standing: injury, causation and redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To satisfy the injury component, a plaintiff must allege that he has sustained or is in immediate danger of sustaining some direct injury. *Commonwealth of Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). Furthermore, "the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" "There must be a 'personal stake in the outcome.'" *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

The other facet of justiciability is ripeness. "The inquiry to determine the ripeness of a claim is two-fold, looking to 'the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration.'" *Regional Mgmt. Corp. Inc. v. Legal Services Corp.,* 186 F.3d 457, 465 (4th Cir.1999) (citing *Abbott Lab. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). "The question of an issue's fitness for judicial decision in turn has two parts—1) 'the agency's interest in crystalizing its policy before that policy is subject to review'; and 2) 'the court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting.' [The] court must balance these two interests (the agency's and the court's) against the hardship to the plaintiff from withholding court consideration at a given time." *Id.* (citation omitted).

As the Court of Appeals for the Fourth Circuit noted in *Charter Federal Sav. Bank v. Office of Thrift Supervision,* "[a] case is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings. The hardship prong is measured by the immediacy of the threat and the burden imposed on the petitioner . . . ." 976 F.2d 203, 208–09 (4th Cir.1992).

## A. Injury

In support of their argument that Plaintiffs lack standing, the defendants focus primarily on the injury element. In their view, the threat of direct injury to Plaintiffs is neither real nor immediate. Central to their position is the fact that Senator Martin is not an actual candidate in the legal sense, since by statute his candidacy cannot be officially declared until February 22, 2007. Moreover, the provisions of Va.Code § 24.2–530, the nucleus of this controversy, is only triggered if Senator Martin has a primary opponent. *See* Va. Code § 24.2–526. An indispensable statutory ingredient of a primary is two compet-

ing candidates. The Board maintains that until that point, which could not legally occur until February 22, 2007, Plaintiffs have no legally protectible interests. The defendants further point out that the amendment to the RPV Party Plan is not effective until June 5, 2006.

Defendants further maintain that the Board's response to Senator Martin's premature declaration of candidacy was not an official action or decision of the Board. The defendants contend that Secretary Jensen merely acknowledged receipt and indicated to the District Committee Chair that the Board, which is composed of three (3) voting members, would follow the law in effect at the time of the 2007 election cycle. *See* Va.Code § 24.2–102. Therefore, the defendants argue that there is no official agency action with respect to Plaintiffs' request to implement the amendment to the Republican Party Plan by holding a closed primary.

In sum, the defendants' position is that Plaintiffs' arguments are contingent on events that may never come to pass. As the defendants point out, Senator Martin could conceivably change his mind about seeking re-election between now and the official date of declaration of candidacy, or no primary opponent may emerge. It is also possible that the Virginia General Assembly could amend § 24.2–530 in the interim.

## B. Causation

Although the bulk of Defendants' argument on standing centers on the injury element, the issue of causal connection also emerged during argument. Virginia law provides for the selection of candidates for public office by a political party. Aside from a primary, which is open to any registered voter, political parties also com-

monly employ a convention, party caucus, or "firehouse primary."[1] *See* § 24.2–508. The latter three (3) forms of candidate selection are closed to all persons except those meeting the criteria set by the individual political party. Senator Martin had the option of being selected exclusively by members of his political party, but presumably made the conscious choice of an open primary. The question then emerges whether the controversy at hand is caused by the restrictive nature of § 24.2–530 or Senator Martin's decision to be nominated by that method. *See Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir.1997).

The plaintiffs aggressively counter that they are being subjected to a continuing and immediate threat of injury as a result of the Board's alleged decision to enforce § 24.2–530. They point out that states must act within limits imposed by the Constitution when regulating a political party's internal processes. *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 109 S.Ct. 1013, 1015, 103 L.Ed.2d 271 (1989). Plaintiffs' claim is predicated on a broad interpretation of their freedom of association, protected by the First and Fourteenth Amendments of the United States Constitution. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622–25, 104 S.Ct. 3244, 3252–54, 82 L.Ed.2d 462 (1984). In Plaintiffs' opinion, this entitlement necessarily includes the right to associate with a political party of one's choice. *See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986).

By logical extension, Plaintiffs contend that this right encompasses the freedom to identify the people who constitute the underlying association. *Id.* at 215–16, 107 S.Ct. 544. On this fairly firm legal foundation, Plaintiffs build their argument that the First Amendment right of association

---

1. A "firehouse primary" is an unassembled caucus.

is broad enough to empower them to exclude members of the opposite political party and perhaps independent voters, from participating in a publically-financed open primary. *See California Democratic Party, et al. v. Jones,* 530 U.S. 567, 574, 120 S.Ct. 2402, 2408, 147 L.Ed.2d 502 (2000). Plaintiffs argue that the right to limit participation to party members only allows them to prevent "party raiding"—a process in which dedicated members of one party vote in an open primary with the intention of altering the outcome of the other party's primary.

According to Plaintiffs, an interest closely allied with their right of association, is their ability "to develop and advance [the party's] shared goals, policies and beliefs." (Mem. Opp. at p. 3.) In its Memorandum in Opposition, Plaintiffs note that "[T]his Court has recognized that the inclusion of persons unaffiliated with a political party [in its nomination process] may seriously distort its collective decisions—thus impairing the party's essential functions . . . ." (Mem. Opp. at p. 6.) This theory has evolved from the teachings of the United States Supreme Court in *NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958), wherein the Court noted, "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association. . . ." The Court later noted in *Kusper v. Pontikes,* 414 U.S. 51, 56–57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973) that freedom to associate with others for the common advancement of political beliefs and ideas is a freedom that encompasses the right to associate with the political party of one's choice. *Id.*

In the plaintiffs' view, the most immediate and continuing threat posed by the open primary is the potential for diluting or distorting the party message. In other words, with Democrats participating in the Republican primary, the Republican candidate must shape his or her position on the issues to accommodate the viewpoints of people who do not share the Republican philosophy. This, Plaintiffs argue, substantially interferes with their constitutionally protected associational rights, in that a commonly shared political philosophy is central to the association.

## C. Ripeness

On the ripeness front, Plaintiffs draw the Court's attention to several cases decided by courts in the Fourth Circuit rejecting claims filed on the eve of the election process. In *Simkins v. Gressette,* 631 F.2d 287 (4th Cir.1980), the Fourth Circuit affirmed the District Court's dismissal of a complaint attacking the constitutionality of South Carolina's State Senate Reapportionate Plan, filed two (2) days before the opening of the filing period set by statute for candidates seeking nomination through state primaries. The Senate Reapportionate Plan at issue was adopted by the South Carolina legislature in 1972. The suit was filed in March of 1980. The Fourth Circuit concurred with the District Court judge that the record reflected no good reason for the delay which, it maintained, would clearly cause a major disruption in the electoral process. In the Court's view, the unjustified delay in filing suit foreclosed the grant of any equitable relief.

Similarly, in *Maryland Citizens for a Representative General Assembly, et al. v. Governor of Maryland,* 429 F.2d 606 (4th Cir.1970), the Fourth Circuit upheld the District Court's dismissal of an action seeking a declaration that the statute apportioning Maryland's General Assembly was unconstitutional and an injunction restraining election officials from conducting the 1970 primary and general elections. Again, the Fourth Circuit agreed with the

District Court that injunctive relief was not appropriate where the action had been filed only thirteen (13) weeks prior to the filing deadline for the primary election. The Court pointed out that reapportionment is a time consuming process and one that implicates important considerations of federalism. It was unlikely, in the Court's opinion, that the process could be completed by the General Assembly in time to enable an orderly elective process. *Id.* at 610.

In this Court's opinion, the scope of relief sought in reapportionment challenges is far greater than the object of the lawsuit presently before this Court. Although admittedly inconvenient and perhaps disruptive, amendment of § 24.2–530 by a special session of the Virginia General Assembly to conform to a court's declaratory judgment, even coupled with the required Department of Justice approval, would not entail the same magnitude of action as reapportionment. It is also important to note that in both *Simkins* and *Maryland Citizens for a Representative General Assembly,* there was an active controversy with legally declared candidates.

Neither *Maryland Citizens for a Representative General Assembly* nor *Simkins* control this Court's analysis. More closely analogous in the plaintiffs' view is *Marshall v. Meadows,* 921 F.Supp. 1490 (E.D.Va.1996), *aff'd,* 105 F.3d 904 (4th Cir. 1997). The question presented in *Marshall* was whether two (2) members of a political party had standing to file suit ninety (90) days before a primary, challenging the constitutionality of Virginia's open primary law, in fact, the very code section at issue in the immediate case, when the political party itself had adopted an open primary and refused to join the suit. The court held that the party activists lacked standing because it was the party that opted for an open primary, which was not a party to the suit. The District Court concluded that the individual plaintiffs could not demonstrate that they stand in a proper representative capacity. *Id.* at 1493.

■ More closely allied with the issues before this Court was the laches portion of the district court's decision in *Marshall*.[2] The Court found that the plaintiffs had "slept on their rights" to the detriment of the incumbent U.S. Senator. The District Court observed that, "[w]ere this Court to strike the statute, permit the state legislature to rework it, and have the Justice Department review it per the Voting Rights Act, various parties including [Senator] Warner and his supporters would be forced into a frenzy of activity. That frenzy would have been avoided had plaintiffs filed suit when they first considered it in 1995." *Id.* at 1494.

On appellate review, the Fourth Circuit affirmed the District Court on standing grounds only and chose not to address the District Court's laches finding. Interestingly, the Fourth Circuit noted in *Marshall* that it was the decision of the Virginia Republican Party to conduct an open primary that was the cause of the alleged injury. "In other words, if a political party's choice of an 'open' primary is a lawful and voluntary one, the decision of the party is the cause of the alleged 'forced' association, not the state law requiring the 'open' primary." *Marshall,* 105 F.3d at 906 (internal citations omitted); *see also Marchioro v. Chaney,* 442 U.S. 191, 199, 99 S.Ct. 2243, 2248, 60 L.Ed.2d 816 (1979).

2. Laches is an affirmative defense to an equitable claim for relief requiring proof of a lack of diligence by the party against whom the defense is asserted and prejudice to the party asserting the defense. *White v. Daniel,* 909 F.2d 99, 102 (4th Cir.1990).

Like the Fourth Circuit in *Marshall,* this Court questions whether the injury claimed by Plaintiffs stems from the statute at issue or the decision of Senator Martin to be nominated by an open and publicly funded primary. Senator Martin could have selected an alternative method which would have insured the party's right to associate exclusively with people who share their political beliefs and philosophy. Instead, Senator Martin exercised his right under § 24.2–509(b), popularly known as the Incumbent Protection Act, to be selected by an open primary that created the electoral environment under attack in this case. However, this Court need not reach the causation issue at this point in time.

### III.  Conclusion

■ This Court does not believe that the alleged injury facing the plaintiffs is either actual or imminent. The State Board of Elections has not made a final decision as to what type of primary will be conducted in 2007. As Secretary Jensen's letter indicates, the Board will make the decision based upon the law in effect in 2007. There will be two intervening sessions of the Virginia General Assembly between the date of Plaintiffs' inquiry and the 2007 election cycle. The Board cannot even consider any prospective candidate's notification of selection of primary method of nomination for the 2007 election until February 22, 2007. Moreover, the amendment to the Party Plan, the basis on which Plaintiffs' request to conduct a closed primary is founded, is not effective until June 5, 2006. Lastly, unless there are multiple declared candidates vying for the nomination, there is no statutory basis under § 24.2–526 to even conduct a primary. Until these factors gel, the plaintiffs have no legally protectible interest at this point in time. A decision at this juncture would be no more than advisory, based on a hypothetical paradigm.

■ This Court does not believe that the strategic adjustments associated with the potential of primary opposition engenders continuing harm in the constitutional sense or imposes an impermissible burden on Plaintiffs' right of free expression. The right of political expression does not include an unfettered right to control the composition of one's audience. The First Amendment affords a political party and its candidate the right to determine the content of its political message, but does not include any guarantees as to when and to whom it will be addressed.

Moreover, as mentioned above, it was Senator Martin who chose to convey his message to a broader political base by opting for the open primary, rather than nomination by convention or caucus. Senator Martin may very well have believed that broader based communications during the primary cycle could be critical to a successful general election campaign. This was his right under the Incumbency Protection Act.

■ Turning to the question of ripeness for adjudication, this Court does not believe that there is an actual issue for judicial review at this time. The Board has made no formal decisions concerning the 2007 election, and has no statutory authority to do so. Absent a formal decision by the Board, its adverse effect, if any, cannot be felt in a concrete way by Plaintiffs. There are a host of eventualities that could change the political landscape between now and 2007. If a potential opponent emerges, Senator Martin may decide to narrow the scope of the selection process himself by choosing to leave his destiny to a convention or caucus rather than an open primary. Since Senator Martin's prematurely filed declaration of candidacy and choice of nomination by

primary have no binding force or effect, he is free to change his mind in the intervening years.[3]

Requiring the plaintiffs to refile their constitutional claims, if deemed appropriate, after an actual justiciable controversy emerges, will cause little hardship. The secondary effect on the party's political message has no constitutional implications. The prospect of an open primary, should Senator Martin select one, could affect campaign strategy and tactics, but it does not place any type of governmental restraint on the content of political speech.

The Court is therefore of the opinion that the claims for declaratory relief raised by the plaintiffs are not justiciable at this point in time. Accordingly, Defendants' Motion to Dismiss filed pursuant to Fed.R.Civ.P. 12(b)(1) is hereby granted. The Court finds it unnecessary to address the issues raised by Defendants' Motion to Dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6).

An appropriate Order will accompany this Memorandum Opinion.

### ORDER

#### (Granting Defendants' Motion to Dismiss)

THIS MATTER is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In making its determinations, the Court has considered the pleadings and the relevant case law, as well as the oral arguments presented on September 14, 2005. For the reasons set forth in the accompanying Memorandum Opinion, the Court GRANTS Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1)

and declines to rule on Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Accordingly, it is HEREBY ORDERED that this case is DISMISSED.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

---

**3.** Plaintiffs argue that Senator Martin is in fact presently a candidate in that he has declared his candidacy, proceeded to raise financial aid and filed the necessary financial reports. While these actions may render him a de facto candidate, he is only a legal candidate after all requirements of §§ 24.520–24.523 are fulfilled.